Chicago Coliseum Club, Appellant, v. William Harrison Dempsey, Also Known as Jack Dempsey, Appellee.

Gen. No. 35,276.

544

Heard in the third division of this court for the first district at the October term, 1931. Opinion filed March 16, 1932.

JOHN F. ROSEN, RALPH ROSEN, G. A. FARABAUGH and WALTER R. ARNOLD, for appellant.

DUNNE & CORBOY and ARTHUR F. DRISCOLL, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

Chicago Coliseum Club, a corporation, as plaintiff, brought its action against William Harrison Dempsey, known as Jack Dempsey, to recover damages for breach of a written contract executed March 13, 1926, but bearing date of March 6 of that year.

Plaintiff was incorporated as an Illinois corporation for the promotion of general pleasure and athletic purposes and to conduct boxing, sparring and wrestling matches and exhibitions for prizes or purses. The defendant William Harrison Dempsey was well known in the pugilistic world and, at the time of the making and execution of the contract in question, held the title of world's Champion Heavy Weight Boxer.

Under the terms of the written agreement, the plaintiff was to promote a public boxing exhibition in

Chicago, or some suitable place to be selected by the promoter, and had engaged the services of one Harry Wills, another well known boxer and pugilist, to engage in a boxing match with the defendant Dempsey for the championship of the world. By the terms of the agreement Dempsey was to receive $10, receipt of which was acknowledged, and the plaintiff further agreed to pay to Dempsey the sum of $300,000 on the 5th day of August 1926,—$500,000 in cash at least 10 days before the date fixed for the contest, and a sum equal to 50 per cent of the net profits over and above the sum of $2,000,000 in the event the gate receipts should exceed that amount. In addition the defendant was to receive 50 per cent of the net revenue derived from moving picture concessions or royalties received by the plaintiff, and defendant agreed to have his life and health insured in favor of the plaintiff in a manner and at a place to be designated by the plaintiff. Defendant further agreed not to engage in any boxing match after the date of the agreement and prior to the date on which the contest was to be held. Certain agreements previously entered into by the defendant with one Floyd Fitzsimmons for a Dempsey-Wills boxing match were declared to be void and of no force and effect. Certain other mutual agreements were contained in the written contract which are not necessary in a consideration of this case.

March 6, 1926, the plaintiff entered into an agreement with Harry Wills, in which Wills agreed to engage in a boxing match with the Jack Dempsey named in the agreement hereinbefore referred to. Under this agreement the plaintiff, Chicago Coliseum Club was to deposit $50,000 in escrow in the National City Bank of New York City, New York, to be paid over to Wills on the 10th day prior to the date fixed for the holding of the boxing contest. Further conditions were provided in said contract with Wills, which, however, are

not necessary to set out in detail. There is no evidence in the record showing that the $50,000 was deposited nor that it has ever been paid, nor is there any evidence in the record showing the financial standing of the Chicago Coliseum Club, a corporation, plaintiff in this suit. This contract between the plaintiff and Wills appears to have been entered into several days before the contract with Dempsey.

March 8, 1926, the plaintiff entered into a contract with one Andrew C. Weisberg, under which it appears that it was necessary for the plaintiff to have the services of an experienced person skilled in promoting boxing exhibitions and that the said Weisberg was possessed of such qualifications and that it was necessary for the plaintiff to procure his help in the promoting of the exhibition. It appears further from the agreement that it was necessary to incur expenditures in the way of traveling expenses, legal services and other costs in and about the promotion of the boxing match, and Weisberg agreed to investigate, canvass and organize the various hotel associations and other business organizations for the purpose of securing accommodations for spectators and to procure subscriptions and contributions from such hotels and associations and others for the erection of an arena and other necessary expense in order to carry out the enterprise and to promote the boxing match in question. Under these agreements Weisberg was to furnish the funds for such purposes and was to be reimbursed out of the receipts from the sale of tickets for the expenses incurred by him, together with a certain amount for his services.

Both the Wills contract and the Weisberg contract are referred to at some length, inasmuch as claims for damages by plaintiff are predicated upon these two agreements. Under the terms of the contract between the plaintiff and Dempsey and the plaintiff and Wills,

the contest was to be held during the month of September, 1926.

July 10, 1926, plaintiff wired Dempsey at Colorado Springs, Colorado, stating that representatives of life and accident insurance companies would call on him for the purpose of examining him for insurance in favor of the Chicago Coliseum Club, in accordance with the terms of his contract, and also requesting the defendant to begin training for the contest not later than August 1, 1926. In answer to this communication plaintiff received a telegram from Dempsey, as follows:

"BM Colorado Springs Colo          July 10th 1926
B. E. Clements

President Chicago Coliseum Club Chgo Entirely too busy training for my coming Tunney match to waste time on insurance representatives stop as you have no contract suggest you stop kidding yourself and me also       ·       Jack Dempsey."

We are unable to conceive upon what theory the defendant could contend that there was no contract, as it appears to be admitted in the proceeding here and bears his signature and the amounts involved are sufficiently large to have created a rather lasting impression on the mind of anyone signing such an agreement. It amounts, however, to a repudiation of the agreement and from that time on Dempsey refused to take any steps to carry out his undertaking. It appears that Dempsey at this time was engaged in preparing himself for a contest with Tunney to be held at Philadelphia, Pennsylvania, sometime in September, and on August 3, 1926, plaintiff, as complainant, filed a bill in the superior court of Marion county, Indiana, asking to have Dempsey restrained and enjoined from engaging in the contest with Tunney, which complainant was informed and believed was to be held on the

16th day of September, and which contest would be in violation of the terms of the agreement entered into between the plaintiff and defendant at Los Angeles, March 13, 1926.

Personal service was had upon the defendant Dempsey in the proceeding in the Indiana court and on August 27, 1926, he entered his general appearance, by his attorneys, and filed his answer in said cause. September 13, 1926, a decree was entered in the superior court of Marion county, finding that the contract was a valid and subsisting contract between the parties, and that the complainant had expended large sums of money in carrying out the terms of the agreement, and entering a decree that Dempsey be perpetually restrained and enjoined from in any way, wise, or manner, training or preparing for or participating in any contracts or engagements in furtherance of any boxing match, prize fight or any exhibition of like nature, and particularly from engaging or entering into any boxing match with one Gene Tunney, or with any person other than the one designated by plaintiff.

It is insisted among other things that the costs incurred by the plaintiff in procuring the injunctional order in Marion county, Indiana, were properly chargeable against Dempsey for his breach of contract and recoverable in this proceeding. Under the evidence in the record in this proceeding there appears to have been a valid subsisting agreement between the plaintiff and Dempsey, in which Dempsey was to perform according to the terms of the agreement and which he refused to do, and the plaintiff, as a matter of law, was entitled at least to nominal damages. For this reason, if for no other, judgment should have been for the plaintiff.

During the proceeding in the circuit court of this county it was sought to introduce evidence for the purpose of showing damages, other than nominal dam-

ages, and in view of the fact that the case has to be retried, this court is asked to consider the various items of expense claimed to have been incurred and various offers of proof made to establish damages for breach of the agreement. Under the proof offered, the question of damages naturally divides itself into the four following propositions:

1st. Loss of profits which would have been derived by the plaintiff in the event of the holding of the contest in question;

2nd. Expenses incurred by the plaintiff prior to the signing of the agreement between the plaintiff and Dempsey;

3rd. Expenses incurred in attempting to restrain the defendant from engaging in other contests and to force him into a compliance with the terms of his agreement with the plaintiff; and

4th. Expenses incurred after the signing of the agreement and before the breach of July 10, 1926.

*Proposition 1.* Plaintiff offered to prove by one Mullins that a boxing exhibition between Dempsey and Wills held in the City of Chicago on September 22, 1926, would bring a gross receipt of $3,000,000, and that the expense incurred would be $1,400,000, leaving a net profit to the promoter of $1,600,000. The court properly sustained an objection to this testimony. The character of the undertaking was such that it would be impossible to produce evidence of a probative character sufficient to establish any amount which could be reasonably ascertainable by reason of the character of the undertaking. The profits from a boxing contest of this character, open to the public, is dependent upon so many different circumstances that they are not susceptible of definite legal determination. The success or failure of such an undertaking depends largely upon the ability of the promoters, the reputation of the contestants and the conditions of the weather at and prior to the holding of the contest, the

accessibility of the place, the extent of the publicity, the possibility of other and counter attractions and many other questions which would enter into consideration. Such an entertainment lacks utterly the element of stability which exists in regular organized business. This fact was practically admitted by the plaintiff by the allegation of its bill filed in the Marion county court of Indiana asking for an injunction against Dempsey. Plaintiff in its bill in that proceeding charged, as follows:

"That by virtue of the premises aforesaid, the plaintiff will, unless it secures the injunctive relief herein prayed for, suffer great and irreparable injury and damages, not compensable by any action at law in damages, the damages being incapable of commensuration, and plaintiff, therefore, has no adequate remedy at law."

Compensation for damages for a breach of contract must be established by evidence from which a court or jury are able to ascertain the extent of such damages by the usual rules of evidence and to a reasonable degree of certainty. We are of the opinion that the performance in question is not susceptible of proof sufficient to satisfy the requirements and that the damages, if any, are purely speculative. *Favar v. Riverview Park,* 144 Ill. App. 86; *Broadway Photoplay Co. v. World Film Corp.,* 225 N. Y. 104; *Wooldridge v. Shea,* 175 N. Y. S. 130; *Bernstein v. Meech,* 130 N. Y. 354.

*Proposition 2:* Expenses incurred by the plaintiff prior to the signing of the agreement between the plaintiff and Dempsey.

The general rule is that in an action for a breach of contract a party can recover only on damages which naturally flow from and are the result of the act complained of. *O'Conner v. Nolan,* 64 Ill. App. 357. The Wills contract was entered into prior to the contract with the defendant and was not made contingent upon

the plaintiff's obtaining a similar agreement with the defendant Dempsey. Under the circumstances the plaintiff speculated as to the result of his efforts to procure the Dempsey contract. It may be argued that there had been negotiations pending between plaintiff and Dempsey which clearly indicated an agreement between them, but the agreement in fact was never consummated until sometime later. The action is based upon the written agreement which was entered into in Los Angeles. Any obligations assumed by the plaintiff prior to that time are not chargeable to the defendant. Moreover, an examination of the record discloses that the $50,000 named in the contract with Wills, which was to be payable upon a signing of the agreement, was not and never has been paid. There is no evidence in the record showing that the plaintiff is responsible financially, and, even though there were, we consider that it is not an element of damage which can be recovered for breach of the contract in question.

*Proposition 3:* Expenses incurred in attempting to restrain the defendant from engaging in other contests and to force him into a compliance with the terms of his agreement with the plaintiff.

After the repudiation of the agreement by the defendant, plaintiff was advised of defendant's match with Tunney which, from the evidence, it appears, was to take place in Philadelphia in the month of September and was in direct conflict with the terms of the agreement entered into between plaintiff and defendant. Plaintiff's bill, filed in the superior court of Marion county, Indiana, was an effort on the part of the plaintiff to compel defendant to live up to the terms of his agreement. The chancellor in the Indiana court entered his decree, which apparently is in full force and effect, and the defendant in violating the terms of that decree, after personal service, is answerable to that court for a violation of the injunctional order entered in said proceeding. The expenses incurred,

however, by the plaintiff in procuring that decree are not collectible in an action for damages in this proceeding; neither are such similar expenses as were incurred in the trips to Colorado and Philadelphia, nor the attorney's fees and other expenses thereby incurred. *Cuyler Realty Co., v. Teneo Co., Inc.,* 188 N. Y. S. 340. The plaintiff having been informed that the defendant intended to proceed no further under his agreement, took such steps at its own financial risk. There was nothing in the agreement regarding attorney's fees and there was nothing in the contract in regard to the services of the defendant from which it would appear that the action for specific performance would lie. After the clear breach of contract by the defendant, the plaintiff proceeded with this character of litigation at its own risk. We are of the opinion that the trial court properly held that this was an element of damages which was not recoverable.

*Proposition 4:* Expenses incurred after the signing of the agreement and before the breach of July 10, 1926.

After the signing of the agreement plaintiff attempted to show expenses incurred by one Weisberg in and about the furtherance of the project. Weisberg testified that he had taken an active part in promoting sports for a number of years and was in the employ of the Chicago Coliseum Club under a written contract during all of the time that his services were rendered in furtherance of this proposition. This contract was introduced in evidence and bore the date of March 8, 1926. Under its terms Weisberg was to be reimbursed out of the gate receipts and profits derived from the performance. His compensation depended entirely upon the success of the exhibition. Under his agreement with the plaintiff there was nothing to charge the plaintiff unconditionally with the costs and expenses of Weisberg's services. The court properly ruled against the admissibility of the evidence.

We find in the record, however, certain evidence which should have been submitted to the jury on the question of damages sustained by the plaintiff. The contract on which the breach of the action is predicated shows a payment of $10 by the plaintiff to the defendant and the receipt acknowledged. It appears that the stadium located in the South Park District, known as Soldier's Field, was considered as a site for the holding of the contest and plaintiff testified that it paid $300 to an architect for plans in the event the stadium was to be used for the performance. This item of damage might have been made more specific and may not have been the best evidence in the case but, standing alone, it was sufficient to go to the jury. There were certain elements in regard to wages paid assistant secretaries which may be substantiated by evidence showing that they were necessary in furtherance of the undertaking. If these expenses were incurred they are recoverable if in furtherance of the general scheme. The defendant should not be required to answer in damages for salaries paid regular officials of the corporation who were presumed to be receiving such salaries by reason of their position, but special expenses incurred are recoverable. The expenses of Hoffman in going to Colorado for the purpose of having Dempsey take his physical examination for insurance, if before the breach and reasonable, are recoverable. The railroad fares for those who went to Los Angeles for the purpose of procuring the signing of the agreement are not recoverable as they were incurred in a furtherance of the procuring of the contract and not after the agreement was entered into. The services of Shank in looking after railroad facilities and making arrangements with the railroad for publicity and special trains and accommodations were items which should be considered and if it develops that they were incurred in a furtherance of the general

plan and properly proven, are items for which the plaintiff should be reimbursed.

The items recoverable are such items of expense as were incurred between the date of the signing of the agreement and the breach of July 10, 1926, by the defendant and such as were incurred as a necessary expense in furtherance of the performance. Proof of such items should be made subject to the usual rules of evidence.

For the reasons stated in this opinion the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL, P. J., and FRIEND, J., concur.