ROBERT I. STEINBERG, Individually and as Representative of a Class, Plaintiff-Appellant, v. CHICAGO MEDICAL SCHOOL, Defendant-Appellee.

First District (3rd Division)   No. 61681

Opinion filed August 19, 1976.

Larry D. Drury and Aaron Z. Gryka, both of Chicago, for appellant.

Foran, Wiss and Schultz, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

In December 1973 the plaintiff, Robert Steinberg, applied for admission to the defendant, the Chicago Medical School, as a first-year student for the academic year 1974-75 and paid an application fee of $15. The Chicago Medical School is a private, not-for-profit educational institution, incorporated in the State of Illinois. His application for admission was rejected and Steinberg filed a class action against the school, claiming that it had failed to evaluate his application and those of other applicants according to the academic entrance criteria printed in the school's bulletin. Specifically, his complaint alleged that the school's decision to accept or reject a particular applicant for the first-year class was primarily based on such nonacademic considerations as the

prospective student's familial relationship to members of the school's faculty and to members of its board of trustees, and the ability of the applicant or his family to pledge or make payment of large sums of money to the school. The complaint further alleged that by using such unpublished criteria to evaluate applicants the school had breached the contract, which Steinberg contended was created when the school accepted his application fee.

In his prayer for relief Steinberg sought an injunction against the school prohibiting the continuation of such admission practices, and an accounting of all application fees, donations, contributions and other sums of money collected by the school from its applicants during a 10-year period prior to the filing of his suit. He did not ask the court to direct the school to admit him, to review his application or to return his fee.

The defendant filed a motion to dismiss, arguing that the complaint failed to state a cause of action because no contract came into existence during its transaction with Steinberg inasmuch as the school's informational publication did not constitute a valid offer. The trial court sustained the motion to dismiss and Steinberg appeals from this order.

The 1974-75 bulletin of the school, which was distributed to prospective students, represented that the following criteria would be used by the school in determining whether applicants would be accepted as first-year medical students:

> "Students are selected on the basis of scholarship, character, and motivation without regard to race, creed, or sex. The student's potential for the study and practice of medicine will be evaluated on the basis of academic achievement, Medical College Admission Test results, personal appraisals by a pre-professional advisory committee or individual instructors, and the personal interview, if requested by the Committee on Admissions."

In his four-count complaint Steinberg alleged, in addition to his claim that the school breached its contract (count I), that the school's practice of using selection standards which were not disclosed in the school's informational brochure, constituted a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) and of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 311 *et seq.*) (count II); fraud (count III); and unjust enrichment (count IV).

Since we are in accord with the trial court's decision that the complaint did not state a cause of action under counts II, III and IV, we shall limit our discussion to count I.

■■ A contract is an agreement between competent parties, based upon a consideration sufficient in law, to do or not do a particular thing. It is a promise or a set of promises for the breach of which the law gives a

remedy, or the performance of which the law in some way recognizes as a duty. (*Rynearson v. Odin-Svenson Development Corp.* (1969), 108 Ill. App. 2d 125, 246 N.E.2d 823.) A contract's essential requirements are: competent parties, valid subject matter, legal consideration, mutuality of obligation and mutuality of agreement. Generally, parties may contract in any situation where there is no legal prohibition, since the law acts by restraint and not by conferring rights. (*Berry v. De Bruyn* (1898), 77 Ill. App. 359.) However, it is basic contract law that in order for a contract to be binding the terms of the contract must be reasonably certain and definite. *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.

■■ A contract, in order to be legally binding, must be based on consideration. (*Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 240 N.E.2d 401.) Consideration has been defined to consist of some right, interest, profit or benefit accruing to one party or some forbearance, disadvantage, detriment, loss or responsibility given, suffered or undertaken by the other. (*Riddle v. La Salle National Bank* (1962), 34 Ill. App. 2d 116, 180 N.E.2d 719.) Money is a valuable consideration and its transfer or payment or promises to pay it or the benefit from the right to its use, will support a contract.

■■ In forming a contract, it is required that both parties assent to the same thing in the same sense (*La Salle National Bank v. International Ltd.* (1970), 129 Ill. App. 2d 381, 263 N.E.2d 506) and that their minds meet on the essential terms and conditions. (*Richton v. Farina* (1973), 14 Ill. App. 3d 697, 303 N.E.2d 218.) Furthermore, the mutual consent essential to the formation of a contract must be gathered from the language employed by the parties or manifested by their words or acts. The intention of the parties gives character to the transaction and if either party contracts in good faith he is entitled to the benefit of his contract no matter what may have been the secret purpose or intention of the other party. *Kelly v. Williams* (1911), 162 Ill. App. 571.

Steinberg contends that the Chicago Medical School's informational brochure constituted an invitation to make an offer; that his subsequent application and the submission of his $15 fee to the school amounted to an offer; that the school's voluntary reception of his fee constituted an acceptance and because of these events a contract was created between the school and himself. He contends that the school was duty bound under the terms of the contract to evaluate his application according to its stated standards and that the deviation from these standards not only breached the contract, but amounted to an arbitrary selection which constituted a violation of due process and equal protection. He concludes that such a breach did in fact take place each and every time during the past ten years that the school evaluated applicants according to their

relationship to the school's faculty members or members of its board of trustees, or in accordance with their ability to make or pledge large sums of money to the school. Finally, he asserts that he is a member and a proper representative of the class that has been damaged by the school's practice.

The school counters that no contract came into being because informational brochures, such as its bulletin, do not constitute offers, but are construed by the courts to be general proposals to consider, examine and negotiate. The school points out that this doctrine has been specifically applied in Illinois to university informational publications. (*People ex rel. Tinkoff v. Northwestern University* (1947), 333 Ill. App. 224, 77 N.E.2d 345.) In *Tinkoff*, a rejected applicant sued to force Northwestern to admit him, claiming that the university had violated the contract that arose when he demonstrated that he had met the school's academic entrance requirements and had submitted his application and fee. His primary contention was that the school's brochure was an offer and that his completion of the acts, required by the bulletin for application, constituted his acceptance.

In rejecting this argument, the court stated:

> "Plaintiffs complain Tinkoff, Jr. was denied the right to contract as guaranteed by the Illinois and United States constitutions. We need only say that he had no right to contract with the University. His right to contract for and pursue an education is limited by the right which the University has under its charter. We see no merit to plaintiff's contention that the rules and regulations were an offer of contract and his compliance therewith and acceptance giving rise to a binding contract. The wording of the bulletin required further action by the University in admitting Tinkoff, Jr. before a contract between them would arise." (333 Ill. App. 224, 232.)

The court based its holding on the fact that Northwestern, as a private educational institution, had reserved in its State charter the right to reject any application for any reason it deemed adequate.

Although the facts of the *Tinkoff* case are similar to the present situation, we believe that the defendant's reliance upon it is misplaced. First, Steinberg is not claiming that his submission of the application and the $15 constituted an acceptance by him; he is merely maintaining that it was an offer, which required the subsequent acceptance of the school to create a contract. Also, it is obvious that his assertion that the bulletin of the school only amounted to an invitation to make an offer, is consistent with the prevailing law and the school's own position.

More importantly, Steinberg is not requesting that the school be ordered to admit him as a student, pursuant to the contract, but only that the school be prohibited from misleading prospective students by stating

in its informational literature, evaluation standards that are not subsequently used in the selection of students. Furthermore, the school does not allege, nor did it demonstrate by way of its bulletin or its charter that it had reserved the right to reject any applicant for any reason. It only stated certain narrow standards by which each and every applicant was to be evaluated.

In relation to the preceding argument, the school also maintains that the $15 application fee did not amount to a legal consideration, but only constituted a precontracting expense. Consequently, the school argues that as a matter of law the $15 is not recoverable as damage even if a contract was eventually entered into and breached. *Chicago Coliseum Club v. Dempsey* (1932), 265 Ill. App. 542.

In the *Dempsey* case, boxing promoters incurred expenses and entered into several contracts that were necessary for the staging of a heavyweight championship fight. However, most of the contracts were entered into prior to signing Dempsey (the then heavyweight champion) for the event. For example, approximately a week prior to Dempsey's signing, the plaintiff entered into a contract with a fighter named Wills, who was to be the champion's opponent. Dempsey signed a contract but later breached it, and the fight promoters sued him for expenses incurred by them under the Wills contract and under other contracts which had been entered into by them in anticipation of the champion signing a contract and fulfilling his obligation thereunder.

The court stated:

> "The general rule is that in an action for a breach of contract a party can recover only on damages which naturally flow from and are the result of the act complained of * * *. The Wills contract was entered into prior to the contract with the defendant and was not made contingent upon the plaintiff's obtaining a similar agreement with the defendant Dempsey. Under the circumstances the plaintiff speculated as to the result of his efforts to procure the Dempsey contract * * *. Any obligations assumed by the plaintiff prior to that time [of contracting with Mr. Dempsey] are not chargeable to the defendant." (265 Ill. App. 542, 550-51.)

The defendant's reliance on the *Dempsey* case is also misplaced. Although it is a leading case for the proposition that expenses incurred during preliminary negotiations to procure a contract are not recoverable as damages, it has no relevance to the allegations of Steinberg's complaint. The defendant misconceives and misstates his position when it asserts that the *Tinkoff* and *Dempsey* cases "are completely dispositive of plaintiff's argument that the informational brochure constitued an 'offer' to evaluate applicants solely on the basis of criteria set forth therein, and the submission of an application with the $15.00 fee the 'consideration'

binding that offer and effecting a consummated contract." He does not claim that the brochure was an offer and his submission of a fee an acceptance of that offer. To repeat, what he does claim is that the brochure was an invitation to make an offer; that his response was an offer, and that the school's retention of his fee was an acceptance of that offer.

■■ We agree with Steinberg's position. We believe that he and the school entered into an enforceable contract; that the school's obligation under the contract was stated in the school's bulletin in a definitive manner and that by accepting his application fee—a valuable consideration—the school bound itself to fulfill its promises. Steinberg accepted the school's promises in good faith and he was entitled to have his application judged according to the school's stated criteria.

The school argues that he should not be allowed to recover because his complaint did not state a causal connection between the rejection of his application and the school's alleged use of unpublished evaluation criteria. It points out that there is an equal probability that his application was rejected for failing to meet the stated standards, and since the cause of his damages is left to conjecture they may be attributed as easily to a condition for which there is no liability as to one for which there is.

This argument focuses on the wrong point. Once again, Steinberg did not allege that he was damaged when the school rejected his application. He alleged that he was damaged when the school used evaluation criteria other than those published in the school's bulletin. This ultimate, well-pleaded allegation was admitted by the school's motion to dismiss. *Logan v. Presbyterian-St. Luke's Hospital* (1968), 92 Ill. App. 2d 68, 235 N.E.2d 851.

■■ The primary purpose of pleadings is to inform the opposite party and the court of the nature of the action and the facts on which it is based. The Civil Practice Act of Illinois provides that pleadings shall be liberally construed to the end that controversies may be settled on their merits. (*Jorgensen v. Baker* (1959), 21 Ill. App. 2d 196, 157 N.E.2d 773; Ill. Rev. Stat. 1973, ch. 110, par. 33(3).) Therefore, a cause of action should not be dismissed unless it clearly appears that no set of facts can be proven under the pleadings which will entitle the plaintiff to recover. (*Herman v. Prudence Mutual Casualty Co.* (1968), 92 Ill. App. 2d 222, 235 N.E.2d 346.) Additionally, a complaint will not be dismissed for failure to state a cause of action if the facts essential to its claim appear by reasonable implication. (*Johnson v. Illini Mutual Insurance Co.* (1958), 18 Ill. App. 2d 211, 151 N.E.2d 634.) A complaint is not required to make out a case which will entitle the plaintiff to all of the sought-after relief, but it need only raise a fair question as to the existence of the right. *People ex rel. Clark v. McCurdie* (1966), 75 Ill. App. 2d 217, 220 N.E.2d 318.

Count I of Steinberg's complaint stated a valid cause of action, and the portion of the trial court's order dismissing that count will be reversed and remanded.

Alternatively, the school asserts that if Steinberg is entitled to recover, the recovery should be limited to $15 because he is not a proper representative of the class of applicants that was supposed to be damaged by the school's use of unpublished entrance standards. Fundamentally, it argues that it had no contract with Steinberg and since he does not have a cause of action, he cannot represent a class of people who may have similar claims. We have found, however, that he does have a cause of action.

The primary test for the validity of a class action is whether the members of the class have a community of interest in the subject matter and the remedy. (*Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 136 N.E.2d 796.) Even if the wrongs were suffered in unrelated transactions, a class action may stand as long as there are common factual and legal issues. (*Gaffney v. Shell Oil Co.* (1974), 19 Ill. App. 3d 987, 312 N.E.2d 753.) The legal issue in this case would be the same as to each member of the class, and the factual issue—the amount payed by each member, an application fee of $15—identical.

■■ Steinberg alleged that in applying for admission to the school, each member of the class assumed that the school would use the selection factors set out in its 1974-75 bulletin, and that admission fees were paid and contracts created, but that each contract was breached in the same manner as his. This allegation established a community of interest between him and the other members of the class in terms of subject matter and remedy, and since he has a valid cause of action against the school, the class has also. He is a proper representative of the class and his suit is a proper vehicle to resolve the common factual and legal issues involved even though the members of the class suffered damage in separate transactions.

■■ However, the class action cannot be as extensive as Steinberg's complaint requested. Recovery cannot be had by everyone who applied to the medical school during the 10 years prior to the filing of his complaint. His action was predicated on standards described in the school's 1974-75 brochure; therefore, the class to be represented is restricted to those applicants who sought admission in reliance on the standards in that brochure.

■■■ We agree with the school's contention that a State through its courts does not have the authority to interfere with the power of the trustees of a private medical school to make rules concerning the admission of students. The requirement in the case of public schools, applicable because they belong to the public, that admission regulations

must be reasonable is not pertinent in the case of a private school or university. (33 Ill. L. & Pr. *Schools* sec. 312 (1970).) We also agree that using unpublished entrance requirements would not violate an applicant's right to due process and equal protection of law. The provisions of the due process clause of the Federal Constitution are inhibitions upon the power of government and not upon the freedom of action of private individuals. (16 Am. Jur. 2d *Constitutional Law* sec. 557 (1964).) The equal protection clause of the fourteenth amendment does not prohibit the individual invasion of individual rights. *Gilmore v. City of Montgomery* (1974), 417 U.S. 556, 41 L. Ed. 2d 304, 94 S. Ct. 2416.

The order dismissing counts II, III and IV is affirmed. The order dismissing count I is reversed. The cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded with directions.

MEJDA, P. J., and McGLOON, J., concur.