LEE ARTOE, Plaintiff-Appellant, v. LARRY CAP *et al.*, Defendants-Appellees, and TED ZAUTIS, Defendant.

First District (1st Division)   No. 85—1243

Opinion filed February 3, 1986.

Lee Artoe, of Chicago, for appellant, *pro se.*

Epton, Mullin & Druth, Ltd., of Chicago (Mary F. Stafford, Wiliam S. Piper, and John August Staas, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Lee Artoe (hereinafter lessor), filed suit against defendants Larry Cap and Margaret Cap (hereinafter Lessees) for fire damage to a building owned by the lessor. The lessees had leased from the lessor a portion of the premises that were damaged by that fire; defendant Ted Zautis was the guarantor of the lease. The complaint filed by the lessor alleged counts in negligence, wilful and wanton misconduct and breach of contract. Thereafter, the lessees filed a motion to dismiss the complaint. In response, the lessor filed a first amended complaint. After the lessees again filed a motion to dismiss, the lessor filed a second amended complaint. At that point, the lessees filed another motion to dismiss. After a hearing on that motion, the second amended complaint was dismissed, and the lessor was denied leave to further amend.

The lessor appeals only from the dismissal of the sixth count of the second amended complaint, which alleged a breach of contract on the part of the lessees. The lessor contends that that count stated a valid cause of action for breach of contract.

The lessor is the owner of a two-story commercial building located at 938 to 944 West Belmont Avenue in Chicago. The ground floor contains four store units, one of which was rented to the lessees for use as an ice cream store and short-order restaurant. The lease period started on April 1, 1983, and ran for a period of one year, with the monthly rent being $1,200. The form portion of the lease agreement contained the following paragraphs. Paragraph 6 provides:

"Lessee shall keep the Premises *** and shall yield the same back to Lessor upon the termination of this lease, whether such termination shall occur by expiration of the term or in any other manner whatsoever, in the same condition of cleanliness, repair and sightliness as at the date of the execution hereof, loss by fire and reasonable wear and tear expected."

Paragraph 12 provides:

"At the termination of this lease, by lapse of time or otherwise, Lessee will yield up immediate possession of the Premises

to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will return the keys therefor to Lessor at the place of payment of rent."

There was also a rider to that lease which included paragraph 28(a)(b). It stated as follows:

"Lessee agrees to furnish and maintain at its sole cost and expense, for and during the term of this lease or any extension thereof;

(1) Comprehensive bodily injury and property damage liability insurance covering all claims in any way related to the demised premises with limits of liability of not less than $500,000.00 for injury to or death of any one person and not less than $1,000,000.00 for injury to or death of more than one person in any one occurrence, and not less than $500,000.00 for property damage, such insurance to name lessor as an additional insured.

(2) Workmen's Compensation Insurance.

(3) Fire and extended coverage insurance in an amount sufficient to replace the building for which the demised premises are a part covering all losses related to or arising from activities of the lessee in the demised premises, said insurance to be payable to lessor.

(4) all such other insurance relating to the premises leased hereunder and all activities conducted thereon as may be required by lessor from time to time."

Paragraph 28(b) provides:

"All such insurance shall be in a form, and with companies, satisfactory to lessor, and all such policies shall provide that they may not be cancelled without at least fifteen days prior written notice to the lessor. Lessee shall deliver certified copies of the policies to the lessor within ten days of the beginning of the term of this lease and renewal policies shall be obtained and certified copies thereof delivered to the lessor, at least thirty days before the expiration date of any policies hereunder. In the event lessee shall at any time fail to furnish, maintain or renew any of such insurance, or to furnish said certified copies of policies, within the time herein provided, lessor shall have the right, but shall not be obligated to provide the same, and all amounts paid by lessor in connection therewith shall constitute so much additional rent and shall be paid with the installment of rent next due hereunder."

Paragraph 37 provides in relevant part:

"It is specifically understood and agreed, in the event of a conflict in the terms of this Rider and the provisions of the lease to which it is attached, that the terms of this supplemental agreement shall control."

On August 12, 1983, there was a fire in the store rented to the lessees which substantially damaged that store and the adjacent stores, plus the second floor and roof of the building. In his initial complaint, the lessor alleged that this fire originated in the lessees' store. Plaintiff also alleged that the fire was caused by deliberate acts and/or negligence on the part of the lessees. Apparently, the lessor had repeatedly requested evidence of insurance, both by oral demand and certified mail. Allegedly, several days before the fire plaintiff was told by the lessees and their insurance agent that an insurance policy had been placed and that evidence would therefore be forthcoming. However, after the fire plaintiff discovered that the lessees had not obtained any insurance.

As stated above, the lessor's second amended complaint alleged several counts in negligence, and in count VI it alleged breach of contract. Count VI stated as follows:

"1. The plaintiff [lessor] and defendants [lessees] are residents of Cook County, Illinois.

2. The plaintiff owns a commercial building at 938-944 West Belmont Avenue, Chicago, Illinois.

3. The defendants, LARRY CAP and MARGARET CAP leased a store from the plaintiff at 938 West Belmont Avenue, Chicago, Illinois under a lease dated February 23, 1983 for a term of one year beginning April 1, 1983. A copy of said lease is attached hereto.

4. The defendants, LARRY CAP and MARGARET CAP, took possession of the premises and operated an ice cream and short order restaurant.

5. The plaintiff performed all of his obligations under said lease.

6. Paragraph 28(a)(3) of said lease requires that the defendants, LARRY CAP and MARGARET CAP carry 'fire and extended coverage insurance in an amount sufficient to replace the building for which the demised premises are a part covering all losses related to or arising from activities of the lessee in the demised premises, said insurance to be payable to lessor.'

7. The defendants have not complied with this provision of the lease.

8. By their failure to comply, the defendants have breached the lease.

9. As a result of said breach, the plaintiff has been damaged in ex-

cess of the amount of $15,000.00.

Wherefore, the plaintiff asks judgment be entered against the defendants, LARRY CAP and MARGARET CAP under Count VI in an amount in excess of $15,000.00, plus the costs of this action."

After a hearing on the lessees' motion to dismiss the second amended complaint, all counts against the lessees were dismissed with prejudice on April 1, 1985. For purposes of the motion to dismiss, it was admitted that the lessees did not obtain an insurance policy covering the fire loss. It was further undisputed that the lessor did not purchase fire insurance when the lessees failed to procure it.

The lessor now contends that he stated a valid cause of action for breach of contract in count VI. We are in agreement with that contention.

■ A contract is an agreement between competent parties, based upon a consideration sufficient in law, to do or not to do a particular thing. It is a promise or a set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes as a duty. (*Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 806-07, 354 N.E.2d 586, affirmed in part and reversed in part (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) A contract's essential requirements are: competent parties, valid subject matter, legal consideration, mutuality of obligation and mutuality of agreement. Generally, parties may contract in any situation where there is no legal prohibition, since the law acts by restraint and not by conferring rights. *Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 807, 354 N.E.2d 586.

A contract, in order to be legally binding, must be based on consideration. (*Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 260, 240 N.E.2d 401.) Consideration has been defined to consist of some right, interest, profit or benefit accruing to one party or some forbearance, disadvantage, detriment, loss or responsibility given, suffered or undertaken by the other. (*Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 807, 354 N.E.2d 586.) Money is valuable consideration, and its transfer or payment or promises to pay it, or the benefit from the right to its use, will support a contract. *Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 807, 354 N.E.2d 586.

■ In forming a contract, it is required that both parties assent to the same thing in the same sense (*LaSalle National Bank v. International Limited* (1970), 129 Ill. App. 2d 381, 394, 263 N.E.2d 506) and that their minds meet on the essential terms and conditions (*Richton v. Farina* (1973), 14 Ill. App. 3d 697, 704, 303 N.E.2d 218).

Furthermore, the mutual consent essential to the formation of a contract must be gathered from the language employed by the parties or manifested by their words or acts. The intention of the parties gives character to the transaction, and if either party contracts in good faith, he is entitled to the benefit of his contract no matter what may have been the secret purpose or intention of the other party. *Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 354 N.E.2d 586.

Count VI alleges that the lessor and the lessees entered into a lease agreement for the premises at 938 West Belmont Avenue in Chicago; and that lease agreement was supported by the consideration of $1,200 per month rent on the part of the lessees and certain promises made by the lessor; that pursuant to that lease the lessees took possession of the premises beginning April 1, 1983, and operated an ice cream shop and short-order restaurant; that the lessor performed all of his obligations under the lease; that paragraph 28(a)(3) of the lease required the lessees to carry fire and extended-coverage insurance in an amount sufficient to replace the building for which the demised premises were a part, covering all losses related to and arising from activities of the lessees in the demised premises; that the lessees did not purchase that insurance; that because of their failure to comply, the lessees breached that particular provision of the lease; and that, as an approximate result of that breach, the lessor was damaged in excess of the amount of $15,000.

We are of the opinion that the allegations contained in count VI of the second amended complaint indicate that the lessor and lessees were competent parties, that the subject matter of the lease was valid subject matter; and there was a mutuality of obligation and mutuality of agreement between the parties; and that this agreement was supported by legal consideration. The allegations in the complaint further went on to state that the lessees breached the lease by failing to obtain fire insurance coverage and that because of this breach, the lessor was damaged. In view of such allegations, which we take as true for purposes of the motion to dismiss, we are of the opinion that count VI stated a valid cause of action for breach of contract.

In their brief, the lessees contend that the fire loss did not arise out of their activities in the demised premises and, because of this, there is no causal connection between the alleged breach of their obligation to obtain insurance and the lessor's damages.

Paragraph 28(a)(3) of the lease does provide that the lessees shall maintain coverage for "all losses related to or arising from activities of the lessee[s] in the demised premises, said insurance to be paid to

lessor." The lessees maintain that they were contractually obligated to purchase insurance only for a loss arising from their activities in the demised premises. The lessees point out that count VI does not allege that the fire was caused by their activities in the demised premises. The lessees further maintain that the lessor states in his brief that "the fire was attributed to arson."

■ However, the lessees admitted for purposes of their motion to dismiss that they failed to purchase any fire insurance coverage. Therefore, it is evident that the lessees were in violation of paragraph 28(a)(3) of the lease. It is true that the lessor stated in his brief that "the fire was attributed to arson." However, this does not indicate that the lessor attributed the fire to arson by a third person. In fact, in the initial complaint, the lessor alleged that the fire was attributable either to intentional acts or to negligence on the part of the lessees. Moreover, in count V of the second amended complaint, the lessor alleged that the fire was caused by the wilful and wanton acts of the lessees. Accordingly, we feel this contention is without merit.

In granting the lessees' motion to dismiss, the court stated:

"The motion is sustained, and I'm dismissing the action for several reasons. (1) It seems to me this case still comes within at least the Stein versus [Yarnall-Todd Chevrolet] ***.

It's a case indicating that the clause is crucial where the lessee is obligated to get the insurance. It would be up to the lessor to do under the terms of the agreement; therefore, according to those three cases in particular Stein, it would be the Court [*sic*] took the position intention [*sic*] of the parties that the plaintiff had looked towards the *** [proceeds] of fire insurance for its relief in the event of fire."

The three cases relied upon by the court are: *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100; *Stein v. Yarnall-Todd Chevrolet, Inc.* (1968), 41 Ill. 2d 32, 241 N.E.2d 439; and *One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400.

In *Cerny-Pickas*, plaintiff leased to defendant a large industrial building with machinery and equipment. Subsequently, the building was destroyed by fire, and the jury found that the fire was caused by the negligence of the defendant's employees. Consequently, *Cerny-Pickas* is a case involving tort liability for negligence rather than breach of contract. Also, the lease in *Cerny-Pickas* included the following clause:

" 'Lessor shall pay for fire insurance on the building and equipment and machinery hereby leased, and Lessee agrees to

pay for any increase in fire insurance premium on such insurance policies, due to any increase in the insurance rate due to the nature of the Lessee's business, or the manner of its conduct of the business.' " (*Cerny-Pickas & Co. v. C.R. John Co.* (1955), 7 Ill. 2d 393, 395, 131 N.E.2d 100.)

The lease also contained a "yield-back" clause that was very similar to the "yield-back" clause in the present lease. Under those facts, our supreme court held that the defendant lessee was not liable for fire damage caused by employee negligence where the yield-back provision excepted loss by fire and ordinary wear. However, in reaching that decision the court relied upon the lessor's specific obligation to pay for fire insurance, with the lessee to pay for certain increases in that insurance. It stated:

> "In the present lease the lessor agrees in clause 14 to pay for fire insurance upon the leased building, equipment and machinery. The parties contemplated that the risk of loss by fire should be insured against \*\*\*. Although clause 26 requires the lessee to carry specified kinds of insurance, its responsibility with respect to fire insurance is limited to the obligation to pay for any increase in the insurance premium due to the nature of its business or the manner in which it was conducted. From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 398, 131 N.E.2d 100.

As indicated above, in the present matter, it was agreed upon specifically by the parties that the lessees, and not the lessor, would be responsible for obtaining fire insurance. This is a specific contractual obligation not related to tort liability for negligence. Therefore, we must conclude that the *Cerny-Pickas* case does not control the present situation.

In *Stein v. Yarnall-Todd Chevrolet, Inc.* (1968), 41 Ill. 2d 32, 241 N.E.2d 439, the lessor sought a judgment for $13,000 against the lessee for damages to the leased property which were allegedly caused by a fire that occurred because of the negligent use of an oxyacetylene torch in the lessee's automobile repair shop by an employee of the lessee. The lease in that case contained the following provision:

> " 'Lessee \*\*\* will not make or permit any use of the premises \*\*\* which may be dangerous to life, limb or property, or which may increase the premium cost of or invalidate any policy of in-

surance carried on the building or covering its operation or on the demised premises or any part or appurtenance thereof. In addition to all other liabilities for breach of any provision of this Section 7, lessee shall pay to lessors an amount equal to the increased cost of any insurance coverage resulting from lessee's act or neglect and all damages sustained by lessors as a consequence thereof.' " (41 Ill. 2d 32, 34, 241 N.E.2d 439.)

The terms of that lease also required the lessee to procure certain types of insurance. However, this provision did not require the lessee to obtain fire protection insurance. In addition, that lease contained a yield-back clause similar to the one contained in the present lease. In *Stein,* the issue was the liability of the lessee for fire damage resulting from an act of negligence on the part of lessee's employee. From the fact that the lease did not specifically require the lessee to obtain fire insurance, our supreme court concluded that it was reasonable to assume that the lessor would obtain such insurance. It stated:

"Though the lessors here did not expressly undertake to procure fire insurance, as the lessor had done in the *Cerny-Pickas* lease, it is obvious, pursuant to a common business practice which the lessors acknowledge, that they would make certain that valuable commercial property, commanding a rental of $436,600 over a 9-year period, would be insured against the catastrophic hazards of fire. As the lessee was required by the lease to maintain other coverages, we conclude that this insurance was to be maintained by the lessors. It is plain that the cost of this insurance was considered in calculating the rental, and an economically realistic conclusion is that the premiums were in practical effect to be paid by the lessee." *Stein v. Yarnall-Todd Chevrolet, Inc.,* (1968), 41 Ill. 2d 32, 36-37, 241 N.E.2d 439.

In addition, in *Stein* the yield-back clause contained language not included in the present lease. It stated:

" 'At the termination of this lease by lapse of time or otherwise, lessee shall return the premises and all leasehold improvements and fixtures therein in as good condition as when lessee took possession, ordinary wear and tear or. damage by fire or other casualty beyond lessee's control excepted ***.' " (41 Ill. 2d 32, 34, 241 N.E.2d 439.)

The supreme court concluded that the language of this clause did not render the lessee liable for damage due to employee negligence. The court stated:

"Viewing the lease· as a whole, we judge that the parties

manifested a pervading intention that the lessee was not to be liable for damage through fire resulting through the lessee's negligence." 41 Ill. 2d 32, 40, 241 N.E.2d 439.

As stated above, in determining the contractual obligation of the lessee to carry fire insurance, it is evident that the tort liability of the lessee for negligence is not relevant. In the present case, there is no need to interpret the lease to determine who is to carry fire insurance since the lease states explicitly that it is the lessees who are to procure such coverage. Since the *Stein* case interprets a lease, which contains material language which is different from the language in the present lease, *Stein* is not applicable to the present situation.

In *One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400, the plaintiffs, 100 South Wacker Drive, Inc., and International Business Machines Corporation (IBM), filed suit against defendant, Szabo Food Service, Inc., for damages allegedly suffered from a fire which originated in the area rented by Szabo. Plaintiff, Wacker, was the lessor and Szabo was the lessee under a lease covering part of the premises at 100 South Wacker Drive in Chicago. IBM was another tenant at that location, and its property was also damaged by the fire. The complaint charged Szabo with several specific acts of negligence. The issue was whether the parties to the lease manifested an intent to exculpate the lessee from liability in the event of loss by fire through negligence of the lessee. That case also contained a yield-back clause. It stated as follows:

 " 'Tenant shall return the Leased Premises and all equipment and fixtures of Landlord in as good condition as and when Tenant originally took possession *** ordinary wear and loss or damage by fire or other casualty *** excepted, failing which Landlord may restore the Leased Premises to such condition and Tenant shall pay the cost thereof.' " 60 Ill. 2d 312, 314, 326 N.E.2d 400.

The dispute in this matter concerned whether this exculpatory provision covered only the leased premises or whether it extended to parts of the building not occupied by the lessee. The court, citing a certain paragraph in the lease, concluded that the aforesaid paragraph assumed that the landlord would carry fire insurance on the building in which the leased premises were a part. (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 317, 326 N.E.2d 400.) The court also pointed to another paragraph which indicated that if the building was made untenable by fire, the landlord would proceed to repair or restore or rehabilitate the building at the landlord's expense. The court concluded that paragraph

certainly indicated that the landlord considered the contingency of fire within the leased premises and that the landlord determined that it would repair the premises at its expense. (60 Ill. 2d 312, 319, 326 N.E.2d 400.) The court then stated that although the tenant was required to carry specified kinds of insurance, its responsibility in reference to fire insurance was limited to the obligation to pay for any increase in the fire insurance premium due to the nature of its business or the manner in which it was conducted. Since the lessee was required to maintain the aforementioned insurance coverages, the court concluded that fire insurance was to be maintained by the lessor.

It is apparent that *One Hundred South Wacker Drive* is another decision which interprets the yield-back provision as an exculpatory provision covering fire damage regarding the lessee. As in the previous cases, the court concluded from the language in the lease agreement that it was the lessor's obligation to carry fire insurance.

The present matter does not involve the same situation, since the lease in question specifically states that the lessees shall purchase fire insurance. Therefore, *One Hundred South Wacker Drive* is not controlling.

■ It is well established that the determination of the intent of the parties as to the lease agreement is to be made upon a consideration of the instrument as a whole. (See *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 396, 131 N.E.2d 100.) As stated above, paragraph 28(a) of the rider states that the present lessees agreed to furnish and maintain, at their sole cost and expense, for and during the term of the present lease, fire and extended-coverage insurance in an amount sufficient to replace the building of which the demised premises are a part, covering all losses related to or arising from activities of the lessees in the demised premises, and this insurance was to be payable to the lessor. It is apparent from this specific provision that the lessees and the lessor agreed that the purchase of fire insurance would be the formers' obligation. It was also established for the purpose of the motion to dismiss that the lessees failed to procure such fire coverage. Paragraph 28(b) further mandates that even if the lessees failed to furnish such insurance, the lessor was not obligated to provide the same type of insurance. It was additionally alleged in the present case that the lessor had been told by the lessees that they had obtained insurance. Under such circumstances, it is evident that there was a sufficient allegation that the lessees breached the lease.

■ The lessees call attention to paragraph 6, the yield-back paragraph, and argue that they are specifically protected from liability for any loss by fire. However, it is evident that this paragraph is con-

tained in the form portion of the lease. Under normal circumstances, it is the lessor's obligation to obtain fire coverage insurance. Given that obligation, it is apparent that a yield-back provision, which exempted the lessees from liability as to fire damage, is consistent with such a provision. Here, a provision in the rider specifically obligated the lessees to provide fire coverage insurance. This provision indicated that the parties contemplated that the lessees would be liable for any damages caused by a fire. That is why the lessees were obligated to procure fire coverage insurance. Paragraph 37 of the rider mandates that if there is a conflict between the form portion of the lease and the paragraphs contained in the rider, the paragraphs in the latter should prevail. To the extent that paragraph 6 exempts the lessees from liability for fire damage, this provision was superseded by the paragraph 28(a), which mandated that the lessees obtain fire coverage insurance. It is reasonable to imply that paragraph 28(a) contemplated that, under this particular lease, the lessees would be liable for fire damage to the premises since that paragraph mandated that the lessees had to obtain fire coverage insurance for the entire building.

The lessees contend that their contractual duty did not shift the risk of fire loss to them but merely added the cost of insurance to the sum stated in the lease as rent. The lessees maintain that payments of fire insurance premiums have not been held to shift the risk of fire loss to the lessees in the face of a lease provision exculpating the lessees from liability for fire loss in the yield-back clause. However, in the present matter, it was established that the lessor never purchased fire coverage insurance. Therefore, the cost of premiums, which could have been added to the lessees' monthly rent, cannot be established or ascertained. Moreover, as stated above, we do not believe that paragraph 6 exculpated the lessees from liability regarding fire damage because of the language in the rider. When the lease agreement is considered as a whole, the intent of the parties was that the lessees would be liable for fire damage, and therefore the lease mandated that they obtain fire coverage insurance for the entire building.

The lessees maintain that had the parties wished to place the risk of loss by fire on the lessees, they would have deleted that provision which excluded fire loss from the yield-back clause and provided that the insurance purchased by the lessees would be payable to the lessees and not to the lessor. Since this was not done, the lessees argue that the agreement desired by the parties was that they intended that the lessor bear the risk of loss due to fire. However, we do not see the logic of this argument. If the premises were damaged by the fire,

it is reasonable that the lease agreement would mandate that the lessor receive the insurance proceeds rather than the lessees. Since the lessor is apparently the titleholder of the property in question, this in no way indicates that the parties wanted the lessor rather than the lessees to bear the risk of loss due to fire.

■ The lessees further maintain that the fact that the lessor failed to purchase fire coverage insurance, even though he was entitled to do so when the lessees failed to obtain such coverage, indicates that the risk of loss was upon the lessor. However, the lessor maintained during the hearing on the motion to dismiss his complaint that he had made numerous verbal requests and at least one written request upon the lessees for proof of fire coverage insurance during the three-month period between the start of the lease and the date on which the fire took place. The lessor alleged that he was assured by the lessees and their insurance agent that insurance had been placed on the building and that evidence thereof would be forthcoming. He found out after the fire that no insurance policy had been purchased. Under these circumstances, we do not feel that the lessor acted unreasonably when he failed to procure fire coverage insurance. A three-month period is not long enough for us to conclude that lessor's actions were so negligent that the risk of loss by fire should be shifted to him. This is especially true in light of the uncontradicted allegation that he was given repeated assurances by the lessees that such coverage had been purchased.

■ Lastly, the lessees argue that the lessor's damages should be limited to the cost of the insurance premiums of the policy which should have been procured by the lessor when the lessees failed to obtain such coverage. However, as stated above, it was established that the lessor never purchased any policy. Therefore, the cost of the premiums cannot be established. In view of this fact and our discussion above, this contention is also without merit. Moreover, the measure of damages for breach of contract normally are the damages reasonably foreseen from the breach. The fire loss could have been reasonably foreseen.

The lessees also point out that paragraph 28(a)(3) provides that the lessees will maintain fire and extended-coverage insurance in an amount sufficient to replace the building for which the demised premises are a part, covering all losses related to or arising from the activities of the lessees in the demised premises. The lessees further point out that count VI of the second amended complaint does not allege that the fire was caused by the lessees' activities in the demised premises and that the lessor states in his brief only that "the fire was

attributed to arson." The lessees maintain that, because there is no allegation of fact in the complaint that the fire resulted from the activities of the lessees, there are no facts alleged to show that the lessees were under a contractual obligation to insure against fire loss.

However, this matter is not alleged in lessees' motion to dismiss the first amended complaint nor in their motion to dismiss the second amended complaint. It is evident that this is a matter which may have been cured very easily at the trial level by amendment if it had been brought to the attention of the court or the lessor. Therefore, we deem this contention to have been waived.

The dismissal of count VI of the second amended complaint is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

BUCKLEY, P.J., and QUINLAN, J., concur.