Fannie Kelly et al., Plaintiffs in Error, v. Richard L. Williams, Defendant in Error.

### Gen. No. 15,608.

1. EVIDENCE—*when opinion evidence incompetent.* Opinions of witnesses as to whether a particular business as conducted was unlawful, is incompetent.

2. LANDLORD AND TENANT—*when lease void.* Knowingly leasing premises for an unlawful and illegal purpose makes the contract void and there can be no recovery; but the unlawful and illegal purpose must be participated in by both parties to the transaction.

Error to the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed June 29, 1911. Two rehearings denied July 10, 1911.

ALDEN, LATHAM & YOUNG, for plaintiff in error; CHARLES MARTIN, of counsel.

BENJAMIN SAMUELS, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought by the plaintiffs, here the plaintiffs in error, against the defendant to recover $800 rent on a lease of certain premises in Cincinnati, Ohio. The cause

was submitted to the court, without a jury. The court found for the defendant and entered judgment accordingly.

The plaintiffs executed a lease to the defendant of the premises in question for a period of five years at a monthly rental of $200. No mention was made in the lease for what purpose the premises were to be used. The defendant took possession and used the first floor of the premises for a museum of anatomy, the second floor for doctors' offices and the third floor for storage purposes. The city authorities objected to some of the exhibits in the museum and the manner of conducting the same, on the ground the same were in violation of the statute of Ohio in part as follows: "It shall be unlawful for any person or persons to give any public or private exhibition of a lascivious, indecent, immoral or impure nature or any exhibition tending to corrupt morals," etc. The penalty for a violation of said statute was for the first offense a fine and a second offense a fine and imprisonment. The defendant was advised by the city authorities they had no objection to the museum if properly conducted and if he would change it he could continue its operation, but same was not done to the satisfaction of said officers and the museum was closed.

The defendant now seeks to avoid the payment of the rent on the ground the business there conducted was unlawful, and the plaintiffs entered into the lease with knowledge of the unlawful nature of the said business. On the trial of these issues much testimony was introduced by the defendant that was hearsay; and opinions of witnesses that the said business was unlawful,—testimony clearly incompetent. However the case was tried by the court, and we shall not consider any of this improper testimony. The testimony introduced might be held sufficient proof that the exhibition was indecent; that it was impure, immoral or lascivious, such as tended to corrupt morals, might be considered, if a true meaning of the said words are understood, questionable under the legal evidence before us. We shall, however, for the purpose of this opinion, assume that the defendant was success-

ful in proving that he violated the Ohio statute in conducting the said museum.

The remaining question is whether the plaintiffs knowingly leased the said premises to the defendant for the purpose of conducting a business in violation of the said statute. Knowingly leasing premises for an unlawful and illegal purpose makes the contract void and there can be no recovery. Ralston v. Boady, 20 Ga. 449; Updike v. Campbell, 4 E. D. Smith (N. Y.) 570; Dougherty v. Seymour, 16 Colo. 289, and authorities there cited.

The testimony showed that Frederick A. Schmidt, a real estate agent, was the authorized agent of all the plaintiffs and had full power and authority to lease the said premises and collect the rents therefor; that the defendant personally and by his agents negotiated the lease for a museum and doctors' offices with Mr. Schmidt. The defendant testified that during these negotiations he had a conversation with Mr. O'Neill, one of the plaintiffs, and told Mr. O'Neill that the business was showing venereal diseases of men and reproductions of exact copies from photographs, that he didn't advertise in the newspapers and allowed no boys under twenty-one years of age to come in, and that the business was legitimate and lawful; that O'Neill said he had seen that on State street in Chicago and asked if it would be anything like he saw, and I said almost identical. Subsequent to this conversation the negotiations were continued with Schmidt and the lease executed by all the parties. The defendant in a sworn statement, in answer to an interrogatory filed by the plaintiffs before the trial under the rules of the Municipal Court, stated: "All negotiations were carried on with Frederick A. Schmidt as agent for the plaintiffs, and no negotiations were had with the plaintiffs themselves." There is no evidence that Schmidt had any knowledge that the business or the manner of the defendant in conducting the same was of a character that was unlawful. In fact the defendant testified that at the time he rented the place of Mr. Schmidt he intended to conduct a legitimate and lawful business, and Mr. Schmidt intended to rent it for a legitimate and lawful business.

Some testimony was also introduced of conversations with a clerk in Mr. Schmidt's office, but there is no showing that would make such conversations, if of any importance, binding upon the plaintiffs.

Whether under such circumstances such knowledge on the part of Mr. O'Neill should be held knowledge on the part of all the plaintiffs, we shall not attempt to determine.

In Pixley v. Boynton, 79 Ill. 351, the court said: "The intention of the parties gives character to the transaction, and if either party contracted in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other party."

In Ryan v. Potwin, 60 Ill. App. 637, the court said: "To make the lease void because of the illegal purpose for which the premises were intended, such a purpose must have been mutual between the parties."

These authorities are cited because it is clear from the evidence that there was no intention on the part of the plaintiffs to lease said premises for an unlawful purpose—and perhaps none on the part of the defendant, for he seemed of the opinion on the trial, notwithstanding his defense in this suit and the opinion of the officers of Cincinnati, that his said business was lawful, even in Ohio. The trial court expressly found: "The court finds that the defendant still claims that the business conducted by him on said premises was lawful."

The question therefore resolves itself into one of whether the plaintiffs had such knowledge of the business and the manner of conducting the same by the defendant that they were bound to know as a matter of law that the same was unlawful and illegal. The only testimony in the record that can be construed as tending to show the plaintiffs made said lease for said unlawful purpose is the testimony of the defendant giving his conversation with Mr. O'Neill hereinbefore set forth. While it was conceded on the trial that the said business was the same as that conducted on State street in Chicago and elsewhere, there is no testimony that Mr.

Kelly v. Williams, 162 Ill. App. 571.

O'Neill had any knowledge that the manner of conducting the said business as intended by the defendant was unlawful.

We apprehend that it will be conceded that the leasing of premises for a museum of anatomy and doctors' offices is lawful. The trial court on the evidence in this case found: "The court finds nothing in the evidence to show that medical offices and museums could not be conducted in such a manner as not to be indecent or lascivious."

In Fox v. Rogers, 171 Mass. 546, the court said: "There is no policy of the law against the plaintiff's recovery unless his contract was illegal, and a contract is not necessarily illegal because it is carried out in an illegal way." To the same effect is Commagere v. Brown, 27 La. An. Rep. 314. In Waugh v. Morris, 8 L. R. Q. B. 202, the court said, p. 207: "We agree that a contract, lawful in itself, is illegal if it be entered into with the object that the law shall be violated."

As already observed, it appears that the plaintiffs entered into said lease with no intention of violating the law. The trial court, at the request of the plaintiffs, held as findings of fact: "The court finds from the evidence that at the time of executing said lease plaintiffs and their agents did not know that the business which the defendant contemplated conducting on said premises was indecent or immoral." The court also held, for some reason not obvious, at the request of the defendant, a contrary finding; but we think the evidence. supported the finding in favor of the plaintiffs, and it seems to us, under the evidence in this record, that the plaintiffs were not bound to know as a matter of law that the said business and the manner the same was to be conducted by the defendant were unlawful and illegal.

We shall not consider the set-off filed by the defendant, for the reason that there was no evidence introduced in support thereof.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*