THOMAS HARRIS et al., Plaintiffs-Appellants, v. AMERICAN GENERAL FINANCE CORPORATION et al., Defendants-Appellees.

Third District    No. 76-251

Opinion filed October 19, 1977.

John E. Cassidy, Jr., of Cassidy, Cassidy & Mueller, of Peoria, for appellants.

No brief filed for appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Plaintiffs Thomas and Lucille Harris and Frank Rosenberg, Inc., appeal from a judgment entered in favor of defendants Albert N. Ballard and John W. Cunningham after a bench trial in the Circuit Court of Tazewell County. The issues on appeal are whether defendants' agent was authorized to negotiate a contract with the plaintiffs and whether a binding contract was created.

On February 18, 1971, Sayre & Fisher Corporation (hereafter referred to as S & F) agreed to pay the Harrises $1,306,000 in exchange for certain improved real estate and 50% of the common stock of Pepco Ltd., a realty investment firm. The Harrises received 147,692 shares of S & F common stock, but were required to pledge back 55,384 shares as security for a $360,000 loan from S & F. The remaining shares were subject to "put" options at a predetermined price of $6.82 per share. S & F agreed to assume an outstanding mortgage of $296,000 on the real estate and to repay a $25,000 loan and $25,000 note owed by the Harrises. S & F further agreed to obtain a second mortgage and to pledge the Pepco stock as security for its promises.

On the same date S & F issued a $60,000 three-year convertible debenture to Frank Rosenberg, Inc., the Harrises' representative, as payment for arranging the land purchase. The holder could demand

immediate payment of the debenture if S & F defaulted on any scheduled interest payment under the instrument, and S & F did default shortly after the debenture was issued. S & F also defaulted on its agreement with the Harrises by failing to buy back stock subject to the "put" options plan. The plaintiffs, consequently, instituted foreclosure proceedings against S & F in the Tazewell County Circuit Court.

In March or April, 1972, American General Finance Corporation (hereafter referred to as AGF), a profitable land development firm, decided to acquire S & F, which was suffering steady losses, as a tax shelter. AGF was controlled by Ballard and Cunningham, who between them owned 90% of its stock.

In April 1972, AGF representatives, including the defendants Ballard and Cunningham, met with S & F's directors to propose a merger of the two companies. The defendants desired immediate control of S & F, which they obtained by tendering a $50,000 check to S & F to meet its expenses. At the conclusion of this meeting a majority of S & F directors and officers resigned, and were replaced by AGF personnel. Ballard became S & F's new chairman and president. The $50,000 check was then returned to Ballard, but was never deposited in S & F's account.

Later in the month defendants instructed their agent Arthur Schwartz to return all of plaintiffs' property in exchange for their S & F stock and a dismissal of their lawsuit. This offer was rejected. In May, Bernard Rosenberg, the owner of Frank Rosenberg, Inc., personally informed the defendants that he required written authorization for Schwartz' agency and the personal guarantees of defendants as preconditions to any settlement of the lawsuit.

On June 16, 1972, Schwartz gave Rosenberg a letter from Ballard stating that Schwartz had "full authority to negotiate with you on behalf of Sayre & Fisher * * *." The letter included the personal financial statements of Ballard and Cunningham and the corporate statements of AGF and S & F. Thereafter Rosenberg and Schwartz entered into negotiations.

On July 25, 1971, Cunningham sent Rosenberg S & F's "proposal for an agreement." By its terms S & F agreed to return all of the plaintiffs' assets in exchange for 72,308 shares of the Harrises' stock and plaintiffs' dismissal with prejudice of their lawsuit. The Harrises' remaining shares were subject to new "put" options at $7.625 per share, but they were required to dispose of all of their stock by February 18, 1973. Rosenberg was required to convert his debenture into 24,720 shares of common stock subject to the same terms as the Harrises. S & F also promised to extend the Harrises' $360,000 note which S & F had received under the 1971 contract, and to obtain a $425,000 life insurance policy on either of defendants as security for its promises. Moreover, Cunningham's letter stated that the

new agreement would be "guaranteed by Albert N. Ballard, John W. Cunningham * * *" and others.

Although the letter mentioned reducing these terms to formal documents, it provided spaces for plaintiffs' signatures below the word "ACCEPTED" and was signed by both the Harrises and Rosenberg. Furthermore, Cunningham's letter required plaintiffs to "leave all pending litigation *in statu quo,* pending completion and execution of formal documents."

On August 1, 1972, S & F proposed certain modifications relating to the "put" options and the amount of life insurance to be obtained which the plaintiffs accepted in writing. Plaintiffs' attorney submitted a formal contract to S & F in early October, which was rejected obstensibly because it required AGF to promise additional security as a guarantor of S & F's agreement. Schwartz, however, testified that Cunningham told him in late October or early November that, "This is too fat a deal for Bernie."

In any event, negotiations broke down and a formal contract was never executed, although plaintiffs held their lawsuit in abeyance as required by Cunningham's July 25 letter. Plaintiffs eventually obtained a decree of foreclosure in February 1974, but by then S & F had initiated bankruptcy proceedings and plaintiffs' judgment could not be satisfied. Thereafter they began these proceedings which resulted in a judgment for defendants from which plaintiffs appeal.

■■ Although defendants have not filed briefs on appeal, this is not a basis for reversing the trial court *pro forma* under the rule of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493. *Talandis* requires us to decide the merits of the appeal without an appellee's brief in cases where the record is simple and the alleged errors can be easily resolved. In other cases we may reverse the trial court only if "the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record * * *." 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

As indicated by the statement of facts, this appeal does not involve simple factual and legal questions which must be fully resolved under *Talandis.* The report of proceedings contains 382 pages and is supplemented by over 20 exhibits, including many lengthy and detailed legal documents. At the same time, however, the record does not include counsels' closing arguments or the trial court's basis for its decision.

Under these circumstances the present appeal should be decided under the "other cases" approach outlined in *Talandis,* and it is our conclusion that the plaintiffs' brief demonstrates *prima facie* reversible error which is supported by the record. Accordingly, we reverse the judgment of the Circuit Court of Tazewell County.

■■ Under proper circumstances the parties' correspondence may

constitute a contract, even if it is necessary to refer to several documents to establish its terms. (See *O'Brien v. Kawazoye* (1st Dist. 1975), 27 Ill. App. 3d 810, 327 N.E.2d 236.) In *Steinberg v. Chicago Medical School* (1st Dist. 1976), 41 Ill. App. 3d 804, 807, 354 N.E.2d 586, 589, the court stated that, "[a] contract's essential requirements are: competent parties, valid subject matter, legal consideration, mutuality of obligation and mutuality of agreement." Judged by these criteria, we believe that the letters of July 25 and August 1, 1972, establish a binding contract.

■■ Since the legal effect of an instrument is not determined by its label, the fact that the July 25 letter purports merely to be "a proposal for an agreement" is not controlling. (See *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.) Similarly, while the parties may decide that there is no contract until formal documents are executed, this is largely a question of intent. (*National Gas Appliance Corp. v. Manitowok Co.* (7th Cir. 1962), 311 F.2d 896.) We doubt that the parties intended such a result here because the July 25 letter required the appellants to hold their lawsuit "*in statu quo*" during the period in which formal documents were to be drawn up. It has been held, moreover, that where, as here, the formal contract is to be substantially based upon the terms of the earlier agreement, a clause contemplating execution of formal documents does not reduce the earlier agreement to a mere negotiation. (*Frank Horton & Co. v. Cook Electric Co.* (7th Cir. 1966), 356 F.2d 485, *cert. denied*, 384 U.S. 952, 16 L. Ed. 2d 548, 86 S. Ct. 1572 (1966); *Evans, Inc. v. Tiffany & Co.* (N.D. Ill. 1976), 416 F. Supp. 224; *cf. Davis v. Magnus* (1st Dist. 1972), 4 Ill. App. 3d 674, 281 N.E.2d 397 (abstract).) Since the July 25 and August 1, 1972, letters constituted a binding contract, S & F's failure to carry out its obligations thereunder amounted to a breach. This is precisely what plaintiffs have argued in their brief, and we agree with their conclusions based upon our examination of the record.

■■ We also agree that defendants personally bound themselves to the contract and therefore may be liable for its breach. It has long been the rule that an individual who signs a promissory note does not relieve himself from personal liability by affixing his corporate title to his signature absent evidence that the parties intended to hold the corporation alone liable for the debt. (*Williams v. Miami Power Co.* (4th Dist. 1890), 36 Ill. App. 107.) Although this is not the precise situation involved in this case, we believe the language of the July 25 letter stating that the contract would be "guaranteed by Albert N. Ballard [and] John W. Cunningham" speaks for itself. The intent of the parties must be determined from the language of their agreement alone where it is not ambiguous (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886), and contract language is not rendered ambiguous simply because the parties do not agree upon its meaning. *Whiting Stoker Co. v.*

840

*Chicago Stoker Corp.* (7th Cir. 1948), 171 F.2d 248, *cert. denied,* 337 U.S. 915, 93 L. Ed. 1725, 69 S. Ct. 1155 (1949).

Even assuming that the word "guaranteed" is ambiguous, extrinsic evidence would be admissible to explain it. (See *La Salle National Insurance Co. v. Executive Auto Leasing Co.* (1st Dist. 1970), 121 Ill. App. 2d 430, 257 N.E.2d 508.) The record shows that plaintiffs insisted from the outset upon Ballard and Cunningham's personal guarantees, that such guarantees were never refused and that defendants, in fact, delivered their personal financial statements to plaintiffs. Under these circumstances plaintiffs, who apparently bargained in good faith, are entitled to the benefit of their contract no matter what defendants may have secretly intended. (See *Kelly v. Williams* (1st Dist. 1911), 162 Ill. App. 571; *Steinberg v. Chicago Medical School* (1st Dist. 1976), 41 Ill. App. 3d 804, 354 N.E.2d 586.) In fact, even if extrinsic evidence could not resolve the ambiguity, we would still construe the ambiguity strongly against the drafter under the doctrine of "contra proferentem." *Hurd v. Illinois Bell Telephone Co.* (N.D. Ill. 1955), 136 F. Supp. 125, *aff'd* (7th Cir. 1956), 234 F.2d 942, *cert. denied,* 352 U.S. 918, 1 L. Ed. 2d 124, 77 S. Ct. 216 (1956).

For these reasons, the judgment of the Circuit Court of Tazewell County is reversed.

Judgment reversed.

STOUDER and SCOTT, JJ., concur.