**CHICAGO LITHO PLATE GRAINING COMPANY, LTD., Plaintiff–Appellee,**

v.

**ALLSTATE CAN COMPANY,
Defendant–Appellant.**

No. 87–2111.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1988.

Decided Jan. 28, 1988.

Anthony Pinelli, Chicago, Ill., for defendant-appellant.

Steven B. Varick, McBride, Baker & Coles, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

By applying basic principles of contract formation and assignment, the magistrate found that the preponderance of the evidence mandated that defendant Allstate Can Company (Allstate) owed plaintiff Chicago Litho Plate Graining Company (Chicago Litho) $30,625.00 plus interest for failing to perform its side of a bargain. We

agree, and affirm for the reasons that follow.

We begin by reciting both the stipulated and contested facts from the record on appeal. Chicago Litho, an Illinois corporation with its principal place of business in Chicago, sued Allstate, a foreign corporation with its principal place of business in Clifton, New Jersey, to recover charges for color separation services performed for Apollo Container Corporation (Apollo). Apollo, a brokerage firm in the packaging business, had assigned the product of these services with the concomitant duty to pay for them to Allstate, which now denies such assignment. These services were for six designs, five related to Christmas and one which depicted Halley's Comet.

Keith Armato, then a salesman for Apollo, contacted a company called Wyandot in 1984. Under an oral agreement, confirmed later by a purchase order, Wyandot purchased decorated tin cans from Apollo which they filled with popcorn and sold. In 1985, Armato obtained a new order from Wyandot for additional decorated tin cans. This order again was by verbal agreement, although a salesman from Wyandot gave Armato a purchase order number. Wyandot never sent the purchase order and subsequently backed out of the agreement after the cans were manufactured.

Armato received Wyandot's verbal agreement in August 1985. Apollo then provided Chicago Litho the order to make color separations and film designs which then were sent to a metal-decorating company for the fabrication of plates later given to Allstate for use in making the cans. Apollo earlier had hired Allstate to manufacture the tin cans. This work was completed by September 1985.

The president of Apollo, Shel Newberger, learned around September 3, 1985, that Armato either had gone to work for Allstate or that he had formed his own company, Unilith, Inc. Allstate requires its salespersons to work as "independents," yet as found by the magistrate, (1) Armato answers his business telephone by saying "Allstate," (2) Armato's business cards and stationery all state "Allstate," and (3) Allstate sets the prices on all orders that Armato takes.

Armato took the Apollo business he controlled with him when he left in early September. Two months later, when Newberger decided that his company could not survive financially, Apollo was liquidated for the benefit of creditors in November 1985.

Right after Armato left, Newberger began negotiating with Richard Papera at Allstate regarding Armato's accounts. They conversed frequently, and by September 30, 1985, Newberger believed that Apollo and Allstate had reached an agreement regarding the Apollo accounts involving Allstate. This understanding was reflected in a letter from Newberger to James Quigley, president of Chicago Litho, dated September 30, 1985, in which he stated that Allstate had agreed to assume responsibility for the Chicago Litho bill on the Christmas design cans.[1] A copy of this letter was also sent to Papera at Allstate. Newberger then sent a second letter bearing that same date to Kranzten Studio, which had done the actual artwork for the films made by Chicago Litho, also informing Kranzten that Allstate would pay the Apollo bill for the matter in question. In both letters, Newberger enclosed the invoices previously sent to Apollo by Chicago Litho and Kranzten, respectively, and told them to rebill the amounts owed to Allstate. Allstate paid the Kranzten bill of $10,200.00, and Papera did not contact either Chicago Litho or Kranzten to say either that they should not bill Allstate or that Newberger had misstated the agreement with Allstate. Chicago Litho subsequently rebilled Allstate for $30,625.00.

Newberger sent an additional letter dated September 30, 1985, to Papera which discussed various orders. Regarding the Wyandot order, this letter said that:

> The Apollo orders for Wyandot, Inc. will be taken over by Allstate. Allstate has assigned the contract with Chicago Litho to Allstate.

---

1. The parties stipulated that during September 1985, Armato told Chicago Litho that Apollo had

agreed to pay all artwork, separations and plate costs and Apollo is to advise Chicago Litho and Krantzten [sic] Studios of this and see to it that these costs previously invoiced to Apollo, are transferred to Allstate.

(Pl.Ex. 4). The letter further stated that Apollo would receive the difference between the cost and selling price and that Allstate would make cans using the same designs for resale to its other customers, which included Apollo. Newberger concluded his letter by asking Papera to let him know if he had "any additions, corrections, or other thoughts, etc."

The telephone calls between Newberger and Papera continued after this letter was sent. On October 17, 1985, Papera wrote Newberger "in reply to your letter of September 30 * * * [w]e are in agreement on most of the points in your letter, but I will restate some and try to clarify others." Regarding the Wyandot designs, Papera stated that:

> Allstate will assume all costs for artwork, separations and plates for the Wyandot designs, and the designs will then belong to Allstate. The costs for the above will not be offset by the in house orders for Wyandot and I can see no profits that we would remit to Apollo.

He concluded this letter by stating that this was his "understanding of our many conversations regarding this unfortunate problem with Keith [Armato]." (Pl.Ex. 6).

At trial, Newberger testified that he phoned for a change in a price given by Papera on an order that had nothing to do with the designs in question but that otherwise he accepted Papera's changes. This acceptance included the term that Apollo would not get the difference between cost and selling price. The consideration for this agreement apparently consisted of the films and designs which became the property of Allstate and which have not been returned by Allstate.

Papera testified in response that after he sent the October 17 letter to Newberger, he became concerned that Wyandot was not taking delivery of the cans. He was not successful in contacting someone at Wyandot who knew of this matter. He also talked to Armato who stated both that he had a verbal agreement with Wyandot and that Newberger should have the purchase order. On October 24, 1985, Papera allegedly wrote a letter to Newberger stating that their agreement was based on having an order from Wyandot and that until the problem was resolved, he felt "the bill for separations should stay with Apollo as we first agreed." Newberger testified he never received this letter. Papera, however, claimed that the letter should have been mailed by his uncle, who takes the office mail to the post office several times each day.

Allstate eventually sold $18,628.79 worth of cans, and Wyandot took approximately $5,000.00–$18,000.00 in cans.[2] The rest, about 5,000 of the cans, were taken by Apollo. Allstate, however, paid neither Chicago Litho nor Apollo any portion of the price it received for these cans.

The case was first tried before Judge Bua on July 30, 1986, who entered judgment for Allstate. After the court entered judgment, Chicago Litho's counsel was contacted by Newberger, who represented that Allstate assumed Apollo's debt in a signed writing. Holding that had this representation been admitted into evidence at trial it might have mandated a different result, Judge Bua granted Chicago Litho's motion for a new trial on the basis of newly discovered evidence, pursuant to Fed.R.Civ.P. 60(b)(6), and assigned the case to Magistrate Bucklo for trial, with the agreement of the parties. After trial on April 22, 1987, Magistrate Bucklo entered judgment for Chicago Litho for the full amount of its claim, $30,625.00 plus interest. Allstate subsequently filed a timely motion for a new trial under Fed.R.Civ.P. 59(a)(2), which was denied. This appeal followed.

We review the district court's finding that Allstate agreed to a binding assignment of the contract between Apollo and Chicago Litho according to the "clearly er-

---

**2.** At oral argument we were told that Allstate did not owe Wyandot on its verbal orders be-

cause Allstate wishes to continue to do business with Wyandot.

roneous" standard of Fed.R.Civ.P. 52(a), which imposes a heavy burden on Allstate as appellant. See *Reeder–Baker v. Lincoln National Corp.*, 834 F.2d 1373, 1377 (7th Cir.1987). As the Supreme Court has stated:

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (citations omitted); *United States v. Rotherham*, 836 F.2d 359, 362 (7th Cir.1988). The question for the appellate court under Rule 52(a) is not whether it would have made the same findings as the trial court, but whether based on the evidence presented it is left with a definite and firm conviction that the trial court erred in its judgment. *Hughes v. United Van Lines*, 829 F.2d 1407, 1416 (7th Cir. 1987).

Allstate contends first that its correspondence with Apollo was not sufficient to form a binding contract because Papera's October 17, 1985 letter contained different terms from those in Newberger's September 30, 1985 letter. Next, Allstate argues that the contract should not be enforced due to lack of consideration. Finally, Allstate maintains that the contract must be rescinded because of the parties' alleged mistake regarding the Wyandot order. Each claim merits summary disposition.

1. *Binding Assignment*

Allstate asserts that the differences between its proposal and Apollo's response demonstrates that there was no meeting of the minds and hence no contract. It is well established that when two parties disagree over a major contract term such as price, there is no agreement or "meeting of the minds," and the agreement is not considered a valid contract. *United*

*Paperworkers Int'l Union v. Wells Badger Indus.*, 835 F.2d 701, 704 (7th Cir.1987). This Court has the latitude to declare a contract has been formed by the conduct of the parties, even if the moment of its making is unascertainable. *Ginsu Products v. Dart Industries*, 786 F.2d 260, 265 (7th Cir.1986). Whether or not there was intent to be bound by contract, however, is not at issue in this case. Cf. *Robbins v. Lynch*, 836 F.2d 330, 336 (7th Cir.1988).

The parties correctly have turned to the laws of Illinois to govern this diversity case. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477; *Boatmen's Nat'l Bank v. Smith*, 835 F.2d 1200, 1202 (7th Cir.1987). The resolution of this case depends to some degree upon § 2–207 of the Uniform Commercial Code (UCC). Under Illinois law incorporating the UCC:

A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

Ill.Rev.Stat. ch. 26 § 2–207(1) (1985). The magistrate held that any additional terms offered by Newberger became part of and did not materially alter the contract under another part of the UCC as adopted in Illinois. Ill.Rev.Stat. ch. 26, § 2–207(2) (1985). While the cases cited by Allstate did not involve the UCC, since this contract governed the sale of goods, the provisions of the UCC do in fact apply.

In this case, Papera sent a confirmation that contained some terms that differed from those offered by Newberger. Newberger did not object to those terms, and Papera clearly accepted that "Allstate will assume all costs for artwork, separations and plates for the Wyandot designs." The principal issue is thus whether the addition of terms by Papera in his October 17 letter would "materially alter" the contract.

Illinois courts, in deciding whether particular terms are material alterations, have

looked to the formulation that a material alteration is one that would "result in surprise or hardship if incorporated without express awareness by the other party." *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 713 (7th Cir.1987). Under Illinois law, the test for whether an additional term would be a material alteration in the contract is "whether the addition constitutes an unreasonable surprise to one of the bargaining parties." *Clifford–Jacobs Forging Company v. Capital Engineering & Mfg. Co.*, 107 Ill.App.3d 29, 33, 62 Ill.Dec. 785, 437 N.E.2d 22 (4th Dist. 1982). The *Clifford* court found no material alteration by a seller's additional term that provided for an increase in the contract price if the seller's costs increased. The buyer's offer had contained a term requiring the seller to notify the buyer of any increase in price. Because the buyer's offer thus contemplated an increase in the price, the court held that as a matter of law the seller's term caused no unreasonable surprise.

■ Regardless of any additional terms proposed by Allstate regarding price specifics, Allstate did accept the terms to which it agreed.[3] That this acceptance was accomplished by correspondence is acceptable under Illinois law. *Harris v. American General Finance Corp.*, 54 Ill.App.3d 835, 11 Ill.Dec. 491, 368 N.E.2d 1099 (3d Dist. 1977). Therefore a binding contract was formed.

## 2. *Lack of Consideration*

■ Allstate disputes the magistrate's finding that it "received consideration in the form of ownership of the designs and films made by Chicago Litho, as well as expected profits." Allstate assumes that every provision in a contract must have a separately bargained for and stated consideration. It need not. *Sarnoff v. Ameri-*

can *Home Products Corp.*, 798 F.2d 1075, 1080 (7th Cir.1986); Restatement (Second) of Contracts, § 80(2) (1979). Nevertheless, Chicago Litho's films and color separations were used to manufacture the decorated tin cans that Allstate has retained. Papera furthermore acknowledged that after assuming the costs for the Wyandot designs, "the designs will then belong to Allstate." Allstate first accepted the benefits of the contract and agreed to the withholding of the bill from Apollo and the subsequent rebilling to Allstate; it cannot now state that it is not liable for payment because it never directly told Chicago Litho it would pay. A failure of consideration would enable Allstate to rescind its contract, *Finke v. Woodard*, 122 Ill.App.3d 911, 78 Ill.Dec. 297, 462 N.E.2d 13 (1984), but since there was adequate consideration as determined at the time of agreement, *Bonner v. Westbound Records, Inc.*, 76 Ill.App.3d 736, 394 N.E.2d 1303, 1308 (1st Dist. 1979), this Court affirms the magistrate's conclusion.

## 3. *Rescission*

■ Allstate finally argues that it was entitled to rescission due to a mistake of fact regarding the existence of the Wyandot orders.[4] It claims that because Papera was unilaterally mistaken about the terms of the contract, there was no agreement, and therefore there was no contract because of lack of mutual understanding of terms and the contract is hence void. It is of course correct that a unilateral mistake may void a contract in the limited circumstances as suggested by the Restatement (Second) of Contracts, § 153(a) (1981). *Hughes*, 829 F.2d at 1418; *Cummings v. Dusenberry*, 129 Ill.App.3d 338, 84 Ill.Dec. 615, 472 N.E.2d 575 (2d Dist. 1984). Moreover, rescission is a proper remedy for a mistake. This mistake, however, must oc-

---

**3.** Even if Papera's addition of terms could be construed as a counter-offer, *Ebert v. Dr. Scholls*, 137 Ill.App.3d 550, 92 Ill.Dec. 323, 484 N.E.2d 1178 (1st Dist.1985), it became a contract when accepted by Apollo through the several conversations Papera had with Newberger after receiving the October 17 letter.

**4.** Allstate waived its rescission argument based on warranty of title by failing to present it to

the district court. *First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir.1988); *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 n. 6 (7th Cir.1987). Furthermore, any collateral allusions to the warranty issue do not require this Court to decide this potentially difficult question. *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988).

cur despite the exercise of reasonable care. *S.T.S. Transport Service v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir. 1985). Unfortunately for Allstate, as found by the magistrate, "Papera was in at least as good a position after September 2, 1985 as Newberger to discover if there was not an order with Wyandot." Allstate has presented nothing to persuade this Court that this finding was clearly erroneous. Rescission therefore was an unavailable remedy for Allstate.

In sum, the magistrate's judgment for Chicago Litho is affirmed.[5]

---

5. In the reply brief and at oral argument, counsel for Allstate raised for the first time the Statute of Frauds as a defense. See Ill.Rev.Stat. ch. 26, § 2–201(1) (1985). This claim came too late and accordingly is deemed waived. *Taylor v. Peabody Coal Co.*, 838 F.2d 227, 229 (7th Cir.1988); *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 249 n. 1 (7th Cir.1987).