ALEXANDER B. MAGNUS, JR., Plaintiff-Appellant, v. LUTHERAN GENERAL HEALTH CARE SYSTEM *et al.*, Defendants-Appellees.— PARKSIDE DEVELOPMENT CORPORATION, Plaintiff-Appellant, v. ALEXANDER B. MAGNUS, JR., Defendant-Appellee.

First District (3rd Division)   Nos. 1—91—2534, 1—91—2661 cons.

Opinion filed September 2, 1992.

Rudnick & Wolfe, of Chicago, for Alexander B. Magnus, Jr.

Mayer, Brown & Platt, of Chicago, for Parkside Development Corporation.

JUSTICE CERDA delivered the opinion of the court:

This is a consolidated appeal arising from the purchase and sale of various assets, including real estate, related to the development of a retirement housing project in Arlington Heights. Albert B. Magnus, Jr., and his partner, Joel Hillman, sold the assets to Lutheran General Health Care System (Lutheran General) and its subsidiary, Parkside Development Corporation (Parkside). One of the improvements on the property was a house. Relying on an October 17, 1986, Letter of Intent (Letter of Intent), Magnus attempted to exercise an option to remove the house by notifying Lutheran General and Parkside, which responded that Magnus had no such right. Magnus then brought an action for declaratory judgment, breach of contract, specific performance, a constructive trust, and reformation of the contract. The trial court granted summary judgment in favor of defendants, Lutheran General and Parkside, on each of Magnus' claims.

On appeal, Magnus asserts that the trial court erred by entering summary judgment in favor of defendants because (1) the Letter of Intent was an enforceable contract; (2) the December 29, 1986, nursing home purchase agreement (Agreement) did not supersede the Letter of Intent; (3) the parties never agreed to exclude the house option; (4) there should have been a constructive trust because defendants knowingly procured Magnus' house through a breach of fiduciary duty committed by Magnus' attorney; and (5) the Agreement should have been reformed because defendants knew that Magnus was mistaken about the Agreement's terms and failed to inform him of the mistake. We affirm the summary judgment in favor of defendants on all of Magnus' claims.

One of the important issues in this case is whether the purchase agreement, which has a clause stating it constitutes the entire agreement and supersedes all other prior agreements, prevails over a prior letter of intent.

After Magnus filed his lawsuit, Parkside filed a claim against Magnus pursuant to the Agreement's indemnity clause. The trial court entered summary judgment against Parkside and in favor of Magnus on the indemnity claim. On appeal, Parkside asserts that the trial court erred (1) in denying its motion for summary judgment on its indemnity claim; and (2) in *sua sponte* entering summary judgment in favor of Magnus on the indemnity claim even though no motion was pending. We affirm.

In 1986, Magnus owned approximately 40 acres of real estate in Arlington Heights. He was living in a private residence on the prop-

erty, which also included the Magnus Farm Nursing Home Convalescent Center (nursing home). Magnus intended to build a retirement housing complex on the portion of the property known as parcel 4. After he obtained financing through the sale of $29.4 million in tax-exempt revenue bonds issued by the Village of Arlington Heights, Magnus and Hillman formed a partnership.

In the spring of 1986, Hillman began negotiating with Lutheran General's president, George B. Caldwell, for the sale of the project, including parcel 4, the financing, and all related interests. Magnus later became involved in the negotiations. Hillman and Magnus negotiated separately with Lutheran General and had agreed not to disclose to each other the terms of their separate negotiations. Lutheran General honored that agreement.

In July 1986, Lutheran General and Magnus signed a proposed agreement for the purchase of Magnus' interest in the project. After months of rocky negotiations, Michael McCarthy, Lutheran General's vice-president and general counsel, sent a letter to Magnus on October 9, 1986, demanding strict compliance with their proposed agreement. Magnus responded that the proposed agreement was not binding and that he was ending the negotiations.

On that same day, however, Magnus gave his attorney, Arthur H. Evans, written authorization to negotiate the deal on Magnus' behalf with four conditions. Most of the conditions related to the price and financing of the sale of the project, the land, and the nursing home. The only condition related to the house was that Magnus could live rent-free in the house until October 1, 1987.

Negotiations resumed, and on October 17, 1986, Lutheran General prepared and signed a Letter of Intent, which provided that Lutheran General would purchase Magnus' interest in the project and that Lutheran General would lease the nursing home to Magnus for 12 months after the closing. The terms and conditions of the Letter of Intent included an option agreement for Magnus to remove the house after the closing as well as a provision that each party's obligations were subject to and contingent on the future execution of the Agreement. If the Agreement was not executed within 30 days, the Letter of Intent would terminate and the parties would be released from any and all obligations.

Magnus signed the Letter of Intent after making handwritten changes to paragraphs four and six. Under paragraph four, Lutheran General would reimburse Magnus for his share of the eligible costs from the bond proceeds. Magnus had already been reimbursed $200,000 for eligible costs, including the bond issuance, zoning, archi-

tects, marketing, and attorney fees. He was seeking another $200,000 reimbursement for those same costs.

After receiving Magnus' modified letter, McCarthy told Evans that Lutheran General would not double reimburse Magnus. Evans stated that he had explained Lutheran General's position to Magnus and that Magnus understood. Evans assured McCarthy that Magnus' handwritten changes related to eligible costs that had not yet been submitted to the trustee for reimbursement, not double reimbursement. Based on Evans' representations, McCarthy initialed Magnus' modifications and sent the letter to Evans.

Around October 27, 1986, Evans informed McCarthy that he had been mistaken and that Magnus wanted double reimbursement. McCarthy told Evans to explain to Magnus that Lutheran General did not agree to those terms. When Evans later told McCarthy that Magnus would not move on that point, McCarthy replied that Lutheran General considered it as another $200,000 in the purchase price that could not be reimbursed. Due to the inability of the parties to reach an agreement regarding paragraph four's interpretation, McCarthy sent a letter to Magnus on November 3, 1986, terminating the Letter of Intent and any further discussions.

On November 10, 1986, Magnus tendered to Lutheran General a proposed real estate sale contract and rider, which included his option to remove the house or be paid $175,000. McCarthy returned an unsigned copy of the contract and rider to Magnus on November 12, 1986, but signed a confidential copy of the rider and sent it to Lutheran General's attorneys for review.

Sometime in November 1986 Hillman met with McCarthy and agreed to take $200,000 less than his share of the purchase price so that Magnus could be paid the additional $200,000 eligible costs. Around November 16, 1986, the parties resumed negotiations. According to McCarthy, there were two major changes in the negotiations: the house option was out of the deal and Hillman's share of the purchase price was reduced by $200,000. When McCarthy told Evans that Magnus could buy the house for $175,000, Evans responded that he did not think Magnus would be interested in buying the house and that he did not want to take the offer back to Magnus because it might incite him. McCarthy told Evans that was his problem, that the house option was out of the deal, and that Lutheran General would agree to the $200,000 eligible costs.

Before the December 30, 1991, closing, McCarthy spoke with Evans, who indicated either that Magnus was still concerned about the house or did not know about the house. McCarthy told Evans that

was his problem because they both knew the documents did not reflect that the house was still part of the deal. Evans then told McCarthy and Latham Williams, one of Lutheran General's attorneys, that the house option was out of the deal.

On December 29, 1986, Magnus signed the Agreement, which did not include a term entitling Magnus to remove the house or receive an additional $175,000. According to Magnus, however, he thought he had retained his option right under the Letter of Intent and did not intend by his execution of the Agreement to waive or cancel that right. Magnus stated that Evans never told him that his option to remove the house was out of the deal. He did not learn of Lutheran General's position until January or February 1987. When Magnus told McCarthy in March 1987 that he thought the house was in the Agreement, McCarthy responded that he was sorry that Evans did not convey the information to Magnus, but it had been negotiated out of the deal.

After his lease on the nursing home expired on August 13, 1987, Magnus notified Lutheran General that he wanted to exercise his option to remove the house from the property, in accordance with the Letter of Intent. In a November 9, 1987, letter, Lutheran General informed Magnus that he did not have such a right.

Magnus filed a lawsuit asserting claims for declaratory judgment, breach of contract, and specific performance based on defendants' refusal to permit him to remove the house or to pay him $175,000. When defendants moved to dismiss the lawsuit on the basis that the Agreement superseded the Letter of Intent, the trial court denied the motion. Magnus amended his complaint to add claims, pleaded in the alternative, for a constructive trust over the house or reformation of the Agreement to reflect the parties' agreement that Magnus had the right to remove the house from the property or be paid $175,000.

Moving for summary judgment on all claims, defendants asserted that the Agreement superseded the Letter of Intent, that Magnus had negotiated away the house option, that the Letter of Intent was not an enforceable contract, that any alleged mistake by Magnus regarding the Agreement's terms was unilateral and not fraud, and that the only witness who could possibly contradict the parol evidence supporting the Agreement's terms as written was Evans, who claimed to have no recollection of any specific facts.

The trial court granted defendants' motion, ruling that the Agreement was clear on its face and superseded the Letter of Intent. The trial court also found that Magnus' lawyer knew that the house option

had been negotiated out of the deal even if Magnus did not know about it. We agree.

In April 1988 Parkside filed a separate lawsuit seeking indemnification against Magnus for the fees and costs it incurred in defending itself against Magnus' lawsuit and any resulting damages. After considering Parkside's summary judgment motion, the trial court ruled that Parkside was not entitled to indemnification for the costs incurred in defending against Magnus' claims because those were not claims within the meaning of the Agreement's indemnity provision. We agree.

The main issue on appeal is whether Magnus' house, which is located on parcel four of the property, was included as one of the assets that Lutheran General purchased or whether Magnus is entitled to an additional $175,000 for the house. Magnus asserts that he has the right to remove the house under the Letter of Intent, which remains a valid and enforceable contract that was not superseded by the Agreement. In the alternative, Magnus asserts that he is entitled to a constructive trust and reformation of the Agreement because his execution of the Agreement was the product of constructive fraud.

Lutheran General responds that Magnus is not entitled to any additional money for the house because the Agreement is enforceable as a complete integration of the Letter of Intent. Lutheran General maintains that the Agreement included the house as part of the purchase; is complete on its face; and expressly supersedes all prior agreements between Magnus and Lutheran General. Even if the court looks beyond the express terms of the written Agreement and looks to parol evidence, Lutheran General argues that the parol evidence establishes that the house option was negotiated out of the deal by the parties' authorized agents. Moreover, Lutheran General argues, Magnus signed the Agreement of his own free will after being advised by his attorney.

On appeal from the entry of a summary judgment, the reviewing court must determine whether the pleadings, admissions, affidavits and depositions on file establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293; Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) Summary judgment is appropriate if all the evidence, viewed most favorably toward Magnus, so overwhelmingly favors Lutheran General that any other verdict would not be permitted to stand. (*Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 635.) Lutheran General's right must be clear, free

from doubt, and determinable solely as a matter of law. *Claudy v. City of Sycamore* (1988), 170 Ill. App. 3d 990, 998.

Magnus' first argument is that the Letter of Intent was an enforceable contract, not mere negotiation, that was not superseded by the Agreement. As evidence of the parties' intention to be bound, Magnus emphasizes the Letter of Intent's language and Lutheran General's November letter purporting to terminate the Letter of Intent. Magnus contends that (1) there would be no need for the Letter of Intent's paragraph 1(e) to void a future writing if the parties never intended for the earlier writing to be binding; (2) that the fact that the parties contemplated signing formal documents does not mean that there was no binding agreement between them; and (3) the condition precedent that the Agreement must be executed within 30 days went solely to the obligation of the parties to perform, not to prevent the formation of a valid contract.

Paragraph 1 of the Letter of Intent states as follows:

> "The obligations of LGHCS hereunder are specifically conditioned upon \*\*\* LGHCS, (Lutheran General) the Greenfields Partnership and The Magnus Partnership and Alexander B. Magnus, Jr. entering into the Purchase Agreement within thirty (30) days hereof containing customary and appropriate representations and warranties related to the transactions contemplated hereby. Each party's obligations hereunder are subject to and contingent upon the execution of the Purchase Agreement. If this Purchase Agreement is not executed within said thirty (30) day time period, this Letter of Intent shall terminate and the parties hereto shall be released from any and all obligations hereunder \*\*\*."

Magnus misplaces his reliance on *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, and *Inland Real Estate Corp. v. Christoph* (1981), 107 Ill. App. 3d 183. Both cases are inapplicable because they did not include a condition precedent or a "subject to" clause. In addition, *Quake Construction, Inc.* is distinguishable because the Illinois Supreme Court ruled that parol evidence should have been considered to determine the parties' intent since the explicit language of the Letter of Intent's cancellation clause and anticipation of a further agreement caused an ambiguity regarding the letter's enforceability. (*Quake Construction, Inc.*, 141 Ill. 2d at 294.) Based on that intent, the court explained, the trier of fact was to determine whether the Letter of Intent was a binding contract. *Quake Construction, Inc.*, 141 Ill. 2d at 309.

This case is distinguishable from *Quake Construction, Inc.* because the trial court considered parol evidence before entering the summary judgment. Furthermore, the Letter of Intent was not ambiguous. It clearly made the Agreement's execution within 30 days a condition precedent to any binding contract.

■ Whether a writing that contains all the essential terms of a contract but contemplates the later execution of a formal document is itself a contract depends on the intent of the parties. (*Inland Real Estate Corp.*, 107 Ill. App. 3d at 185.) To determine intent, the entire contract must be viewed as a whole. (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 1011.) Language is the most reliable indicator of the parties' intent. *Braeside Realty Trust*, 133 Ill. App. 3d at 1011.

■ If the letter's language is ambiguous, parol evidence should be used to determine whether the parties intended to be bound. (*Inland Real Estate Corp.*, 107 Ill. App. 3d at 185.) If there is no ambiguity, however, the parties' intent must be determined only from the agreement's language. *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 839.

■ There is a difference between the execution of a formal agreement being a condition precedent to a binding contract and a mere reference to a future contract. If the parties construe the execution of a formal agreement as a condition precedent, no contract arises unless and until the formal agreement is executed, even if all the terms of the contract have been agreed on. (*Quake Construction, Inc.*, 141 Ill. 2d at 287-88; *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 126-27.) A mere reference to a future contract, however, will not necessarily negate the existence of a present contract (*Quake Construction, Inc.*, 141 Ill. 2d at 288), especially where the formal contract is to be substantially based on the earlier agreement's terms. *Harris*, 54 Ill. App. 3d at 839.

Illinois courts have repeatedly held that language similar to the Letter of Intent's paragraph 1(e) was unambiguous, indicating as a matter of law that no contract came into existence until the subsequent document was executed. In *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1101, there was no contract due to a clause stating that the purchase was subject to a definitive purchase and sale contract to be executed by the parties. Although the letter of intent contained exhaustive provisions regarding the purchase price, brokerage fees, bonuses, warranties, insurance, and noncompetition clauses, it also included the clause, "Our purchase is subject to a definitive Purchase and Sale Contract to be executed by the parties." (*Interway,*

*Inc.*, 85 Ill. App. 3d at 1096.) The court held that the term "subject to" was unambiguous as a matter of law and meant that a contract had not yet been formed despite the statement, "This will confirm our agreement." *Interway, Inc.*, 85 Ill. App. 3d at 1107.

Similarly, there was no contract in *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 743-44, because its letter of intent was expressly conditioned on the parties entering into a mutually satisfactory definitive written agreement. The court found that there was no contractual relationship between the parties unless and until the definitive agreement was executed in writing. *Terracom Development Group*, 50 Ill. App. 3d at 744. See also *Chicago Investment Corp.*, 107 Ill. 2d 120. *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550; *S.N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941; *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390.

■ The evidence in this case shows that the parties intended that execution of the formal Agreement within 30 days was a condition precedent to the formation of a contract. The Letter of Intent also stated that if the Agreement were not executed within 30 days, the Letter of Intent was void.

Magnus' argument that the Agreement was executed within 30 days is meritless. Magnus stated that McCarthy executed the Agreement by signing a confidential copy of Magnus' contract of sale and rider on November 12, 1986, and sending it to his own attorneys. What McCarthy gave his attorneys is irrelevant. He never signed or delivered a signed contract to Magnus. In fact, he sent the documents back to Magnus unsigned.

■ Since the Agreement was not executed within 30 days, the Letter of Intent was not a binding contract. Even if it had been a binding contract, however, and was still effective at the time of closing, the Agreement superseded the Letter of Intent.

It is well settled under the doctrine of merger and the parol evidence rule that a written agreement that is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter (*Chicago White Metal Casting, Inc. v. Treiber* (1987), 162 Ill. App. 3d 562; *Kraft v. No. 2 Galesburg Crown Finance Corp.* (1981), 95 Ill. App. 3d 1044, 1050-51), particularly when the contract contains an unambiguous merger or integration clause. *Vitkauskas v. State Farm Mutual Automobile Insurance Co.* (1987), 157 Ill. App. 3d 317.

Section 24 of the Agreement states:

*"24.0 Entire Agreement.* This Agreement, including the Schedules annexed hereto, constitute the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter thereof."

The language of this integration clause is unambiguous. Since the Agreement was intended as the final expression of the parties' agreement, is extensive and specific, and is complete on its face, it supersedes the Letter of Intent, which cannot be used to contradict the Agreement. The Agreement was the product of lengthy negotiations between sophisticated parties represented by attorneys. Moreover, Magnus, who was familiar with this type of provision from his 20 to 30 years of business experience, stated that he reviewed parts of the Agreement with his attorney prior to signing it.

The determination that summary judgment is appropriate will not be reversed unless the trial court abused its discretion such that Magnus' right to fundamental justice was violated. (*Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 727.) That is not the case here. The trial court did not abuse its discretion by entering summary judgment in favor of Lutheran General because the Agreement superseded the Letter of Intent.

In the alternative, Magnus asserts that the trial court erred by entering summary judgment for defendants on Magnus' claims for a constructive trust and reformation based on constructive fraud. There is no merit to that argument.

A constructive trust can be established where there exists a fiduciary relationship and a subsequent abuse of confidence arising from that relationship. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 453.) It is an appropriate remedy where a third party has been unjustly enriched due to knowingly acquiring property as the result of a fiduciary's breach of duty. (*A.T. Kearney, Inc. v. Inca International, Inc.* (1985), 132 Ill. App. 3d 655, 661.) To establish constructive fraud, however, clear and convincing evidence is needed. *In re Gerard* (1989), 132 Ill. 2d 507, 527.

Contract reformation is proper where one party is mistaken about an instrument's terms and where the other party knows of the mistake but fails to inform him or conceals the truth. (*Ballard v. Granby* (1980), 90 Ill. App. 3d 13, 15, 412 N.E.2d 1067.) A plaintiff will be entitled to reformation of a written contract if he proves by clear and convincing evidence that there was a meeting of the minds resulting in an actual agreement between the parties, but at the time the agreement was reduced to writing and executed, some agreed

upon provision was omitted or one not agreed upon was inserted either through a mutual mistake or a mistake by one party and fraud by another. *Great American Federal Savings & Loan Association v. Grivas* (1985), 137 Ill. App. 3d 267, 274, 484 N.E.2d 429.

■ The evidence in this case establishes that the parties, through their authorized agents, negotiated out a $175,000 house option in exchange for a $200,000 double reimbursement. There is no evidence that defendants knew that Evans did not tell Magnus about the house option. Although defendants were aware that Evans was having difficulties with Magnus, McCarthy made it clear to Evans that his client was Evans' problem and that the house option was out of the deal. Although Magnus argues that he was mistaken as to the terms of the written Agreement, he is bound thereby because one is under a duty to learn or know the contents of a written contract before he signs it. (*Leon v. Max E. Miller & Son, Inc.* (1974), 23 Ill. App. 3d 694, 320 N.E.2d 256.) Since there is no basis to establish a constructive trust and no evidence of constructive fraud, we affirm the summary judgment in favor of defendants.

■ Finally, Parkside asserts that the trial court erred in denying its motion for summary judgment on its indemnification claim against Magnus and that the trial court erred in *sua sponte* entering summary judgment in favor of Magnus when no motion was pending. We disagree.

Parkside's claim for indemnification of costs incurred to defend itself against Magnus' lawsuit is based on the Agreement's indemnity clause, which provides:

"10.2 *Indemnification by Seller*. For a period of one (1) year from the termination of the Lease Seller agrees to indemnify and hold harmless Buyer from and against any and all claims, actions, causes of action, losses, damages, costs and expenses (including reasonable attorneys' fees) of any kind whatsoever arising out of or incident to or in connection with any and all of the following:

10.2.1 *Misrepresentation; Breach*. Any material misrepresentation, breach of any warranty or representation or nonfulfillment of any agreement, covenant or condition on the part of Seller contained in this Agreement or in any certificate, schedule, list, exhibit or other writing furnished to Buyer by Seller pursuant to or in connection with this Agreement and the transactions contemplated hereby.

10.22. *Asserted Claims*. Any claim of any type whatsoever asserted against Buyer by any person, corporation, state or

federal government or other entity of any type arising out of or in connection with (a) any act, conduct, failure to act or omission of Seller which occurred or occurs at any time and which is not disclosed to Buyer as part of this Agreement."

An indemnity agreement is an agreement whereby the indemnitor agrees to protect the indemnitee from claims asserted against the indemnitee by third persons. See Lewy, *The Use of Exculpatory Clauses Affecting Real Property, Leases & Hold Harmless Agreements & the Insurance Implications Involved* (1964), 46 Chi. Bar Rec. 131.

This indemnity clause does not include the costs Parkside incurred in defending itself against Magnus' claims. Therefore, the trial court properly denied Parkside's motion for summary judgment. By denying that motion, the trial court in effect ruled in favor of Magnus on Parkside's motion even though Magnus did not have a pending summary judgment motion.

Based on the foregoing, the summary judgment entered in favor of Lutheran General on Magnus' claims is affirmed, the denial of Parkside's summary judgment motion on its indemnity claim is affirmed, and the granting of summary judgment in favor of Magnus on the indemnity claim is affirmed.

Affirmed.

RIZZI and TULLY, JJ., concur.